**UNITED STATES of America, Appellee,**

v.

**Robert RHODES, Appellant.**

**No. 97–3131.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 13, 1998.

Decided June 19, 1998

Lois Godfrey Wye, appointed by the court, argued the cause for appellant. With her on the briefs was John P. Dean, appointed by the court.

Lisa C. Baskerville, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney, John R. Fisher and Thomas C. Black, Assistant U.S. Attorneys.

Before: WALD, SILBERMAN, and TATEL, Circuit Judges.

Opinion for the Court by Circuit Judge TATEL.

Dissenting opinion filed by Circuit Judge SILBERMAN.

TATEL, Circuit Judge:

At resentencing following remand required by *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), appellant sought downward departure based on his rehabilitative efforts undertaken while serving his original sentence. Finding departure foreclosed under the Sentencing Guidelines, the district court denied appellant's request. Because we find nothing in the Guidelines prohibiting departures based on post-conviction rehabilitation, we reverse and remand for the district court to determine whether

appellant's rehabilitative efforts, when compared to the rehabilitative efforts of all defendants, were so exceptional as to warrant departure.

## I

A jury convicted appellant Robert Rhodes of two counts of possession of a controlled substance with intent to distribute, 21 U.S.C. § 841(a) (1994), and one count of using or carrying a firearm in connection with a drug trafficking crime, 18 U.S.C. § 924(c) (1994). The district court sentenced Rhodes to concurrent 121-month terms of imprisonment for his drug possession convictions. For the firearm conviction, the district court sentenced him to a consecutive sixty-month term. Because of the section 924(c) conviction, the district court declined to apply section 2D1.1(b)(1)'s two-level enhancement for possession of a dangerous weapon, U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2D1.1(b)(1) (1997). *See id.* § 2K2.4 backg'd (section 924(c) conviction precludes the application of "any specific offense characteristic for ... firearm ... use ... or possession").

After this court affirmed Rhodes' conviction, *United States v. Rhodes* ("*Rhodes I*"), 62 F.3d 1449, 1450–51 (D.C.Cir.1995), the Supreme Court issued *Bailey v. United States,* 516 U.S. at 143, 116 S.Ct. 501 (section 924(c) requires "active employment" of a firearm for conviction), granted Rhodes' subsequently filed petition for certiorari, vacated *Rhodes I,* and remanded for reconsideration in light of *Bailey. Rhodes v. United States,* 517 U.S. 1164–65, 116 S.Ct. 1562, 134 L.Ed.2d 662 (1996). We in turn reversed Rhodes' section 924(c) conviction and remanded his remaining convictions to the district court "for possible resentencing taking into account the provisions of § 2D1.1(b)(1)." *United States v. Rhodes* ("*Rhodes II*"), 106 F.3d 429, 433 (D.C.Cir.), *cert. denied,* — U.S. ——, 118 S.Ct. 248, 139 L.Ed.2d 177 (1997).

At resentencing, Rhodes sought downward departure, arguing that during his six and a half years in prison, he had taken "every opportunity" to improve his circumstances, entering drug rehabilitation, taking vocation-

al and college-level courses, consistently getting above-average or far-above-average work reports, and repaying his assessment early. Finding no authority to depart based on post-conviction rehabilitation, the district court rejected Rhodes' request.

■ Again appealing, Rhodes now contends that the district court misperceived its departure authority. Although we review district court departure decisions for abuse of discretion, *Koon v. United States,* 518 U.S. 81, 96–100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), "whether a given factor could *ever* be a permissible basis for departure is a question of law which we address *de novo.*" *United States v. Sun–Diamond Growers,* 138 F.3d 961, 975 (D.C.Cir.1998) (citing *Koon,* 518 U.S. at 100, 116 S.Ct. 2035).

## II

■ We begin with the government's contention that *Rhodes II* limited the district court to applying section 2D1.1(b)(1)'s weapon-possession enhancement, thus precluding Rhodes from seeking departure. Had *Rhodes II* remanded "solely to apply" or even "to apply" section 2D1.1(b)(1), we would agree. But *Rhodes II* contains no such prescriptive language. It merely remanded for "possible resentencing *taking into account* the provisions of § 2D1.1(b)(1)." *Rhodes II,* 106 F.3d at 433 (emphasis added). Nothing in this open-ended language limits the district court to the mechanical application of the Guidelines' weapon enhancement.

The government argues that our rejection of *de novo* resentencing in *United States v. Whren,* 111 F.3d 956, 959–60 (D.C.Cir.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 1059, 140 L.Ed.2d 120 (1998), barred Rhodes' departure argument in the district court. In *Whren* we held that unless we "expressly direct[ ] otherwise," at resentencing occasioned by remand, sentencing courts may consider "only such new arguments or new facts as are made newly relevant by the court of appeals' decision—whether by the reasoning or by the result." *Id* at 960. Relying on this language, the government argues that *Whren* limits resentencing to facts existing at the time of original sentencing.

We disagree. *Whren* considered only whether a defendant could seek departure based on facts *available* at the time of initial sentencing (defendant's presence within 1,000 feet of a school), not whether, as here, he could do so based on facts not even existing at the time of initial sentencing (postconviction rehabilitation). Indeed, *Whren* itself said that a "defendant should not be held to have waived an issue if he did not have a reason to raise it at his original sentencing." *Id.* As the government acknowledges, Rhodes "could not have argued [at initial sentencing] for a departure based upon his post-sentence rehabilitative efforts since these efforts had not yet taken place." Appellee's Br. at 9. Moreover, consideration of post-initial sentencing events, in those rare circumstances in which such events may become relevant, neither contravenes *Whren*'s concern with ensuring that parties receive fair notice of their opponent's arguments at initial sentencing nor undermines its goal that district courts "resolve all material issues . . . when the record is fresh in mind." *Whren*, 111 F.3d at 960. Rhodes thus never waived his argument that the Sentencing Guidelines allow such departures, an issue to which we now turn.

### III

Recognizing a sentencing court's "obligation to consider all the relevant factors in a case and to impose a sentence outside the guidelines in an appropriate case," S.REP. No. 98–225, at 52 (1983), the Sentencing Reform Act of 1984 gave district courts authority to depart from an applicable Guidelines range if they find "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission," 18 U.S.C. § 3553(b). The Sentencing Commission, acknowledging that in drafting the Guidelines it had not adequately taken into consideration "unusual" cases, U.S.S.G. ch. 1, pt. A, intro. cmt. 4(b); *see Koon*, 518 U.S. at 93, 116 S.Ct. 2035, allowed district courts to depart in "atypical case[s], [where] a particular guideline linguistically applies but where conduct significantly differs from the norm." U.S.S.G. ch. 1, pt. A, intro. cmt. 4(b). *See*

*generally id.* § 5K2.0 (discussing departures under the Guidelines).

■ In approaching departure requests, sentencing courts operate under a set of clearly defined principles. As *Koon* directs, if the district court identifies features of a case that " 'potentially . . . take it outside the Guidelines' "heartland" and make of it a special, or unusual, case,' " *Koon*, 518 U.S. at 95, 116 S.Ct. 2035 (quoting *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir.1993) (Breyer, C.J.)), it must determine whether " 'the Commission [has] forbidden departures based on those features[.]' " *Id.* (quoting *Rivera*, 994 F.2d at 949). *Koon* requires district courts to ask this question because Congress gave the Sentencing Commission, not courts, authority categorically to prohibit consideration of sentencing factors.

> [F]or the courts to conclude a factor must not be considered under any circumstances would be to transgress the policymaking authority vested in the Commission.
>
> . . . .
>
> . . . Congress created the Commission to "establish sentencing policies and practices for the Federal criminal justice system," and Congress instructed the Commission, not the courts, to "review and revise" the Guidelines periodically. As a result, the Commission has assumed that its role is "over time [to] . . . refine the guidelines to specify more precisely when departures should and should not be permitted." Had Congress intended the courts to supervise the Commission's treatment of departure factors, we expect it would have said so in a clear way. It did not, and we will not assume this role.

*Id.* at 106–09, 116 S.Ct. 2035 (internal citations omitted). If, considering "only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission," 18 U.S.C. § 3553(b), the district court determines that the Commission prohibited consideration of a given factor, that ends the matter—the court may not depart. But if nothing in the Guidelines prohibits consideration of the factor, then *Koon* directs further analysis to determine the appropriate departure standard, an issue we return to in section IV.

Applying *Koon* to this case, we begin by asking whether the Commission prohibited consideration of post-conviction rehabilitation. *Koon* itself largely answers this question. Pointing out that the Commission "chose to prohibit consideration of only a few factors, and not otherwise to limit, as a categorical matter, the considerations which might bear upon the decision to depart," *Koon*, 518 U.S. at 94, 116 S.Ct. 2035, *Koon* identifies only race, sex, national origin, creed, religion, and socioeconomic status, *see* U.S.S.G. § 5H1.10, lack of guidance as a youth, *see id.* § 5H1.12, drug or alcohol abuse, *see id.* § 5H1.4, and personal financial difficulties and economic pressures upon a trade or business, *see id.* § 5K2.12, as prohibited under the Guidelines. *Koon*, 518 U.S. at 93, 116 S.Ct. 2035. Obviously, post-conviction rehabilitation is not one of these prohibited factors, nor have we found any other provision of the Guidelines, policy statements, or official commentary of the Sentencing Commission prohibiting its consideration. We therefore hold, as have two of our sister circuits, that sentencing courts may consider post-conviction rehabilitation at resentencing. *See United States v. Core*, 125 F.3d 74, 75 (2d Cir.1997) ("We find nothing in the pertinent statutes or the Sentencing Guidelines that prevents a sentencing judge from considering postconviction rehabilitation in prison as a basis for departure if resentencing becomes necessary."), *cert. denied*, —— U.S. ——, 118 S.Ct. 735, 139 L.Ed.2d 672 (1998); *United States v. Sally*, 116 F.3d 76, 80 (3d Cir.1997) (holding that "post-offense rehabilitation efforts, including those which occur *post-conviction*, may constitute a sufficient factor warranting a downward departure").

Attempting to distinguish *Koon* and avoid the Second and Third Circuits' holdings that sentencing courts may depart based on post-conviction rehabilitation, the government argues that such departures somehow "revive the parole system" abolished by the Sentencing Reform Act. Our dissenting colleague goes even further. Citing authority granted to the Bureau of Prisons to award "good time" credits as well as the abolition of parole, Judge Silberman argues that "the very passage" of the Sentencing Reform Act "im-plicitly" precluded consideration of post-conviction rehabilitation, concluding that "it would not be permissible for even the Sentencing Commission itself to authorize such a departure." Dis. at 1. Certainly to the extent the Act clearly limits sentencing discretion, courts must act accordingly, regardless of the Guidelines' silence. For example, if the Guidelines contained no prohibition on consideration of an offender's race as a departure factor, *see* U.S.S.G. § 5H1.10, the Act's direction that the Commission ensure the Guidelines' neutrality as to offender race, *see* 28 U.S.C. § 994(d) (1994)—if not the Fifth Amendment—would clearly prevent such departures. But neither the Act nor any other provision of law we have found explicitly bars consideration of post-conviction rehabilitation.

We think the government and the dissent, moreover, misinterpret the implications to be drawn from the abolition of parole and overlook significant differences between parole and resentencing. Congress ended parole largely to remedy significant problems flowing from the fact that district court sentences for terms of imprisonment were generally open-ended, with the United States Parole Commission actually determining an offender's date of release. As a result, "the offender, the victim, and society" were unaware of the prison release date regardless of the nominal term imposed. S.REP. No. 98–225, at 46. Split authority between the Parole Commission and the courts also produced sentencing inconsistency because judges were "tempted to sentence a defendant on the basis of when they believe[d] the Parole Commission" might release the defendant. *Id.* To solve these problems, the Sentencing Reform Act vested sole sentencing responsibility in district courts, *see Mistretta v. United States*, 488 U.S. 361, 367, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (the Act "consolidates the power that had been exercised by the sentencing judge and the Parole Commission to decide what punishment an offender should suffer"), and instituted "real-time" sentencing, ensuring that the sentence imposed by the district court will actually be served, *see id.* (the Act "makes all sentences basically determinate" with prisoners re-

leased at the completion of their sentence "reduced only by any credit earned by good behavior while in custody"); *see also United States v. Parker*, 936 F.2d 950, 956 (7th Cir.1991) (discussing the real-time nature of sentencing under the Guidelines); U.S.S.G. ch. 1, pt. A, intro. cmt. 3 (in abolishing the parole system, "Congress first sought honesty in sentencing").

Allowing district courts to depart from the Guidelines for post-conviction rehabilitation implicates none of the concerns that primarily led Congress to abolish parole. There will be no mystery about the sentences defendants will serve because sentences that take account of post-conviction rehabilitation will be entirely determinate. And because the same district court that imposed the initial, erroneous sentence will impose the second, correct sentence, such sentences pose no risk of judicial second-guessing.

Nor would consideration of post-conviction rehabilitation "infringe upon" the Bureau's responsibility for awarding good time credit under 18 U.S.C. § 3624. *See* Dis. at 1384. While considerations that inform the Bureau of Prisons' exercise of discretion in awarding good time credits, *see* 18 U.S.C. § 3624(b)(1) (in awarding good time credits, the Bureau of Prisons should consider whether "the prisoner has displayed exemplary compliance with institutional disciplinary regulations"); *id.* ("In awarding credit under this section, the Bureau shall consider whether the prisoner ... has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree."), may parallel some factors sentencing courts could weigh for post-conviction rehabilitation departures, awards of good time credits differ from post-conviction departures in several important respects. For one thing, good time credits simply reduce time served for behavior expected of all prisoners, *see United States v. Brown*, 59 F.3d 102, 105 (9th Cir.1995) (noting that "compliance with the conditions for awarding good time credit is one of the terms of the original sentence"), while departures based on rehabilitation alter the very terms of imprisonment; indeed, prisoners receiving departures at resentencing will remain eligible for future good time credits. Moreover,

it is clear from Department of Justice statistics showing that prisoners eligible for good time credits (*i.e.*, their sentences exceeded one year but were not for life, *see* 18 U.S.C. § 3624(b)(1)) served between eighty-seven and ninety percent of their sentences, *see* UNITED STATES DEPARTMENT OF JUSTICE, BUREAU OF JUSTICE STATISTICS, COMPENDIUM OF FEDERAL JUSTICE STATISTICS, 1995, at 83 (1995) (studying prisoners released between October 1, 1994 and September 30, 1995), that *most* prisoners receive good time credits, *cf. United States v. Tocco*, 135 F.3d 116, 132 (2d Cir.) (assuming in the context of calculating a maximum prison term that prisoners will generally comply with prison regulations and therefore receive good time credit despite Bureau of Prison discretion), *cert. denied*, —— U.S. ——, 118 S.Ct. 1581, 140 L.Ed.2d 795 (1998). As we hold in section IV, however, post-conviction rehabilitation departures will be available only in *extraordinary* cases. Departures at resentencing for post-conviction rehabilitation thus no more represent awards of good time credit than they amount to grants of parole. *Cf. Core*, 125 F.3d at 78 (arguing that section 3624(b)'s good time credit provision has no bearing on departures based on post-conviction rehabilitation).

At two points in its brief, the government points to Federal Rule of Criminal Procedure 35, suggesting that Congress' 1984 modification of the rule provides another ground to prohibit departures based upon post-conviction rehabilitation. But that amendment merely deleted Rule 35's reference to a district court's discretion to reduce sentences on its own motion within 120 days of certain specified contingencies, *compare* FED. R.CRIM.P. 35(b) (1986) (amended 1987) (allowing courts on their own motion to modify sentences already imposed in certain circumstances), *with* FED. R.CRIM. P. 35(b) (1998) (allowing courts to modify sentences already imposed on motion of government for substantial assistance); it said nothing about departures at resentencing in response to a defendant's motion. The government has identified nothing in either the Act or its legislative history, *see* S.REP. No. 98–225, at 158 (discussing the amendment to Rule 35 without mentioning district court departure

authority), suggesting that this amendment limits district court authority to consider all relevant information at resentencing.

For its final effort to distinguish *Koon*, the government, as well as our dissenting colleague, *see* Dis. at 2, argues that because all defendants can potentially seek departure based on pre-initial sentencing rehabilitation, while only those defendants "lucky enough" to be resentenced following appeal can seek departure for post-conviction rehabilitation, Appellee's Br. at 14, allowing Rhodes' departure would contravene the Guidelines' goal of treating similarly situated defendants alike. Any disparity that might result from allowing the district court to consider post-conviction rehabilitation, however, flows not from Rhodes being "lucky enough" to be resentenced, or from some "random" event, Dis. at 2, but rather from the reversal of his section 924(c) conviction. The Sentencing Reform Act seeks to eliminate not *all* sentencing disparities, but only "unwarranted" disparities, *see* 18 U.S.C. § 3553(a)(6) (sentencing judges must consider "the need to avoid unwarranted sentence disparities"); 28 U.S.C. § 991(b)(1)(B) (directing Commission to "avoid[ ] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct"); *id.* § 994(f) (Commission should "reduc[e] unwarranted sentence disparities"). Distinguishing between prisoners whose convictions are reversed on appeal and all other prisoners hardly seems "unwarranted." *Cf. United States v. LaBonte*, 520 U.S. 751, ——, 117 S.Ct. 1673, 1679, 137 L.Ed.2d 1001 (1997) (disparity arising from normal exercise of prosecutorial discretion not unwarranted).

Considering post-conviction rehabilitation, moreover, is perfectly consistent with the fact that Congress, notwithstanding its concern about reducing unwarranted sentencing disparity, directed the Sentencing Commission to maintain "sufficient flexibility to permit individualized sentences." 28 U.S.C. § 991(b)(1)(B). "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that

sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon*, 518 U.S. at 113, 116 S.Ct. 2035. In enacting the Sentencing Reform Act, Congress preserved the long-standing rule that "*[n]o limitation* shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661 (emphasis added); *see also United States v. Wishnefsky*, 7 F.3d 254, 256 (D.C.Cir.1993) (noting that the Act recodified 18 U.S.C. § 3577 into section 3661, without change); *accord* 18 U.S.C. § 3553(a)(1) (sentencing courts shall consider "the nature and circumstances of the offense *and* the history and characteristics of the defendant") (emphasis added). We know of no reason why sentencing courts' broad mandate under sections 3553(a) and 3661 to sentence defendants as they stand before the court—whether after plea bargaining, trial, or appeal—should exclude consideration of post-conviction rehabilitation. *See Core*, 125 F.3d at 77 (at resentencing, district courts have obligation to consider defendants as they stand before the court "at that time").

To be sure, both the Sentencing Reform Act and its legislative history reflect congressional concern with the failure of rehabilitation as the central goal of sentencing. *See, e.g.,* 28 U.S.C. § 994(k) (directing the Commission to "insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant"); S.REP. No. 98–225, at 40 (citing studies rejecting basing parole decisions on rehabilitation and concluding that "[w]e know too little about human behavior to be able to rehabilitate individuals on a routine basis or even to determine accurately whether or when a particular prisoner has been rehabilitated"); *id.* at 53 n. 74 (indicating in a footnote that Congress considered the abolition of parole consistent with doubts about the efficacy of rehabilitation and the difficulty of accurately gauging rehabilitation). Yet, in many places the Act takes rehabilitation into account. In addition to providing good time credits in part for rehabilitative efforts, the Act re-

quires sentencing courts to consider "the need for the sentence imposed . . . to provide the defendant with needed educational and vocational training . . . or other correctional treatment." 18 U.S.C. § 3553(a)(2)(D); *see also United States v. Harrington,* 947 F.2d 956, 959 n. 6 (D.C.Cir.1991) ("While Congress . . . rejected imprisonment as a means to achieve rehabilitation, it also recognized 'correctional treatment' as a proper goal of sentencing."). The Guidelines themselves describe the "basic purposes of criminal punishment" promoted by the Act as "deterrence, incapacitation, just punishment, *and rehabilitation,*" U.S.S.G. ch. 1, pt. A intro. cmt. 2 (emphasis added), and explicitly mention rehabilitation as one factor to be weighed in the acceptance of responsibility departure, section 3E1.1. *See* U.S.S.G. § 3E1.1 n.1(g); *see also* section IV, *infra.* Given rehabilitation's continuing role in sentencing, and in the absence of any contrary directive from the Commission, we decline to read the Act's abolition of parole and restructuring of good time credits as definitive congressional statements that district courts may not account for post-conviction rehabilitation. Although the Commission may someday choose to prohibit departures based on post-conviction rehabilitation, we have no authority to make that decision for it. *See Koon,* 518 U.S. at 106–09, 116 S.Ct. 2035.

## IV

■ Having concluded that nothing in the Guidelines prohibits post-conviction rehabilitation departures, we move to *Koon's* next set of questions in order to determine the threshold for departure Rhodes must meet and the method of analysis the district court should undertake. *See Koon,* 518 U.S. at 95, 116 S.Ct. 2035. *Koon* classified permissible departure factors into three general categories: encouraged, discouraged, or unmentioned in the Guidelines. If the Guidelines encourage departures based on a given factor, sentencing courts may depart "if the applicable Guideline does not already take it into account." *Id.* at 96. If the Guidelines discourage departures based on the factor, or if the factor is encouraged but already taken into account by the applicable Guideline, courts may depart "only if the factor is pres-

ent to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Id.* If the factor is "unmentioned" in the Guidelines, courts must, "after considering the 'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole,' decide whether it is sufficient to take the case out of the Guideline's heartland." *Id.* (quoting *Rivera,* 994 F.2d at 949). Departures based on unmentioned factors should be " 'highly infrequent.' " *Id.* (quoting U.S.S.G. ch. 1, pt. A).

Post-conviction rehabilitation does not fit easily into *Koon's* framework. *Koon* focused largely on those sections of the Guidelines that give fairly clear departure instructions. *Id.* at 94–95, 116 S.Ct. 2035. For example, the Court cites Guidelines that use language broadly encouraging departures, like section 5K2.10, which directs that "[i]f the victim's wrongful conduct contributed significantly to provoking the offense behavior, the court *may reduce* the sentence below the guideline range to reflect the nature and circumstances of the offense," U.S.S.G. § 5K2.10 (emphasis added). *See Koon,* 518 U.S. at 94, 116 S.Ct. 2035. *Koon* also referred to Guidelines broadly discouraging departures, like section 5H1.6—"Family ties and responsibilities and community ties are *not ordinarily relevant* in determining whether a sentence should be outside the applicable guideline range," U.S.S.G. § 5H1.6 (emphasis added)—and section 5H1.2—"Education and vocational skills are *not ordinarily relevant* in determining whether a sentence should be outside the applicable guideline range," *id.* § 5H1.2 (emphasis added). *See Koon,* 518 U.S. at 95, 116 S.Ct. 2035.

The Guidelines offer no such clear instruction about postconviction rehabilitation. Although the Guidelines mention "post-offense rehabilitative efforts," U.S.S.G. § 3E1.1 n.1(g), a concept linguistically broad enough to cover post-conviction rehabilitation, that reference appears in the acceptance of responsibility departure, which generally applies only to pretrial efforts, *see id.* n. 2 ("[A] determination that a defendant has accepted responsibility will be based primarily upon pretrial statements and conduct."). Post-

conviction rehabilitation is thus neither clearly "encouraged" nor "discouraged," as *Koon* used those terms. And because of section 3E1.1's reference to "post-offense rehabilitative efforts," it is also not "unmentioned."

Faced with this quandary, the Third Circuit, relying on a Fourth Circuit decision, *United States v. Brock,* 108 F.3d 31 (4th Cir.1997), treated post-conviction rehabilitation as "already taken into account" by the commentary to the acceptance of responsibility departure. *Sally,* 116 F.3d at 80 (citing *Brock,* 108 F.3d at 35). *Brock,* in turn, drew this approach from an earlier Fourth Circuit decision, *United States v. Hairston,* 96 F.3d 102 (4th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 956, 136 L.Ed.2d 843 (1997), which considered whether district courts could depart based on a defendant's restitution despite the fact that application note 1(c) to the acceptance of responsibility departure mentions restitution. *Id.* at 107 (citing U.S.S.G. § 3E1.1 n.1(c), which lists "voluntary payment of restitution prior to adjudication of guilt" as a consideration in evaluating acceptance of responsibility). According to *Hairston,* the listing of a factor as supporting a reduction within the Guidelines "implies" either "that the factor is discouraged as a basis for departure from the Guidelines, or alternatively, that the factor is encouraged— at least as a basis for reduction—but has already been taken into account." *Id.* (emphasis omitted). *Hairston, Sally,* and *Brock* thus found that mentioned factors already taken into account in an explicit departure Guideline are, at least implicitly, analogous to *Koon*'s second category.

Turning to the question of the circumstances under which a district court can depart, and building on *Hairston, Brock* concluded that if a factor is "listed by the Commission as one appropriately considered in applying an adjustment to the guidelines, a court may depart only if the factor is present to such an exceptional or extraordinary degree that it removes the case from the heartland of situations to which the guideline was fashioned to apply." *Brock,* 108 F.3d at 35. For district courts to depart based on such a factor, *Brock* held, the factor must be present "to such an excep-

tional degree that the situation cannot be considered typical of those circumstances" in which the explicit departure—rehabilitation in the context of acceptance of responsibility—is normally granted. *Id. Sally,* in turn, applied this rationale to the issue we face in this case—post-offense rehabilitative efforts that occur *post-conviction. Sally,* 116 F.3d at 80.

■ We think the Third Circuit's approach makes sense and therefore adopt its requirement that before district courts can depart based on post-conviction rehabilitation, that factor must be present " 'to such an exceptional degree that the situation cannot be considered typical of those circumstances in which the acceptance of responsibility adjustment is granted.' " *Id.* (quoting *Brock,* 108 F.3d at 35). Treating post-offense rehabilitation as mentioned by a departure within the Guidelines, thus implying that such departures are either "discouraged" or "encouraged but already taken into account," not only is faithful to *Koon,* but also accurately reflects the content of the Guidelines. We read the Commission's mentioning of a factor within the context of a relatively narrow departure Guideline to mean that the factor represents an appropriate sentencing consideration, as well as to imply that courts may depart beyond the terms of the Guideline, but only if the factor is present to an "unusual" extent.

■ Applying this standard to the facts of this case—that is, determining whether Rhodes' work, education, and other rehabilitative activities exceed "to an exceptional degree" the rehabilitative efforts of all defendants, *cf., e.g.,* FEDERAL BUREAU OF PRISONS, U.S. DEPARTMENT OF JUSTICE, PROGRAM STATEMENT No. 5251.04 ¶ 1(a) (1996) (requiring federal prisoners "physically and mentally able to work ... to participate in [a] work program"); FEDERAL BUREAU OF PRISONS, U.S. DEPARTMENT OF JUSTICE, PROGRAM STATEMENT No. 5350.25 ¶ 1 (1997) (requiring prisoners who have neither a General Educational Development (GED) credential nor high school diploma "to attend an adult literacy program for a minimum of 240 instructional hours or until a GED is achieved")—is a question *Koon* directs us to leave, at least

in the first instance, to the district court. *Koon*, 518 U.S. at 98, 116 S.Ct. 2035. Informed by their "vantage point and day-to-day experience in criminal sentencing," district courts are best equipped to determine whether a case falls outside the "heartland." *Id.* Because district courts "see so many more Guidelines cases than appellate courts do," we defer to their "institutional advantage ... in making these sorts of determinations," subject, of course, to review for abuse of discretion. *Id.*

This case is remanded to the district court for further proceedings consistent with this opinion.

*So ordered.*

SILBERMAN, *Circuit Judge*, dissenting:

I agree with the majority that the Sentencing Guidelines do not address the question presented—whether a district court may consider a prisoner's post-conviction conduct when it resentences a prisoner following an appeal. But I do not believe this case is controlled by the standards set forth in *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), that govern guideline departures. *But see United States v. Core*, 125 F.3d 74 (2d Cir.1997); *United States v. Sally*, 116 F.3d 76 (3d Cir.1997). I think the very passage of the Sentencing Reform Act of 1984, which abolished parole and substantially reduced and restructured good behavior adjustments, implicitly precludes a district court from considering post-conviction behavior in imposing sentences. Under that analysis, it would not be permissible for even the Sentencing Commission itself to authorize such a departure.

Congress chose to take account of a defendant's rehabilitative efforts in a different and more limited way than it had under the parole system. The Bureau of Prisons may award good-time credits to a prisoner who has shown "exemplary compliance with institutional disciplinary regulations," including progress toward earning a degree. 18 U.S.C. § 3624 (1994). This is just the sort of determination that Rhodes has asked the district court to make, arguing that "he has earned his GED, taken college level courses, consistently received better than average to much better than average work reports, paid the full $150 assessment imposed by the District Court ... completed one drug rehabilitation program ... and taken advantage of every other opportunity for rehabilitation presented to him while incarcerated." Rather than operating within the framework that Congress has provided, appellant has asked the district court to infringe upon the Bureau's role. *See United States v. Evans*, 1 F.3d 654 (7th Cir.1993) (per curiam) ("[I]t is the Bureau of Prisons, not the court, that determines whether a federal prisoner should receive good time credit.")

One of the primary goals of the Act was to narrow the wide disparity in sentences imposed on similarly situated defendants. U.S. SENTENCING GUIDELINES MANUAL, ch.1, pt. A, intro. cmt. 3 (1997). To be sure, the Act requires a court to consider the individual circumstances of the defendant as well as the need for uniformity in sentencing. 18 U.S.C. § 3553(a) (1994). Post-conviction good conduct, however, is not a circumstance particular to appellant. Rhodes will have the chance to secure a downward departure that is unavailable to other prisoners with identical, or even superior, prison records. The Sentencing Reform Act seeks to end the sort of unfairness that results from allowing some defendants to gain consideration that others cannot. When sentencing was almost totally discretionary, some judges relaxed sentences for reasons that others refused even to consider. Rhodes' position injects the same unfairness back into the process. The line between those who will have the opportunity to make his argument and those who will not is totally random. Only those prisoners who are lucky enough to have a sentencing judge who commits legal error can benefit from their postconviction conduct.

Accordingly, I respectfully dissent.