**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Charles RUDOLPH, Defendant–
Appellant.**

**No. 97–2053.**

United States Court of Appeals,
Sixth Circuit.

Argued: Aug. 12, 1999

Decided and Filed: Sept. 14, 1999

ARGUED and BRIEFED: Timothy M. Holloway, Constitutional Litigation Associates, Detroit, Michigan, for Appellant. Jennifer J. Peregord, Office Of The U.S. Attorney, Detroit, Michigan, for Appellee. ON BRIEF: David J. Debold, Office Of The U.S. Attorney, Detroit, Michigan, for Appellee.

Before: KEITH, BOGGS, and CLAY, Circuit Judges.

## OPINION

BOGGS, Circuit Judge.

Charles Rudolph filed a motion to vacate one of three counts of his conviction. When the district court resentenced Rudolph, it applied a sentence enhancement and it denied his request for a downward departure for his alleged post-sentence rehabilitation. Rudolph appeals, contending that the district court erred by holding that it lacked the discretion to consider his request for the departure, and that the district court committed constitutional error by resentencing him after vacating one of the counts of conviction. We reverse to the extent that the district court held that it could not depart downward based on post-sentence rehabilitation, and we remand for resentencing. In all other respects, we affirm.

### I. Background

In July 1993, a jury found Charles Rudolph guilty on three counts: possession of heroin within 1000 feet of a school, with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and § 860; possessing a firearm after previously being convicted of a felony, in violation of 18 U.S.C. § 922(g); and the unlawful use and carrying of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The district court sentenced Rudolph to a term of 78 months on counts one and two, and to a consecutive sentence of five years on count 3. Rudolph appealed his convictions, and this court affirmed. *See United States v. Rudolph*, No. 93–2392, 1994 WL 592932 (6th Cir. Oct.27, 1994) (unpublished), *cert. denied*, 514 U.S. 1086, 115 S.Ct. 1801, 131 L.Ed.2d 727 (1995).

On December 5, 1996, Rudolph filed a motion under 28 U.S.C. § 2255 to vacate the § 924(c) count. Rudolph argued that the jury instructions on the § 924(c) count could not survive scrutiny after the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The government agreed, but noted that the error involved only the instructions, and that evidence supported a finding that Rudolph pos-

sessed a firearm. The government urged the court to resentence Rudolph on counts one and two, and to add the four-level enhancement of USSG § 2K2.1(b)(5), which applies to felons who possess a firearm in connection with another felony offense (such as heroin possession).

Before resentencing, Rudolph filed a memorandum arguing that the court could not resentence him on other counts, and that the court should sentence him at the low end of the guideline range because he had rehabilitated himself. As evidence of his "rehabilitation," he noted that the "National Library of Poetry" had twice given him its "Editor's Choice Award," that his supervisor praised his work managing the inmate law library, and that he passed his GED exam. The memorandum did not seek a downward departure; it merely asked that the court resentence Rudolph "at the low end of the guidelines."

The district court held a resentencing hearing on September 15, 1997. At the hearing, Rudolph's attorney asserted that resentencing on other counts would place Rudolph in double jeopardy and violate his due process rights. Also, for the first time, Rudolph's attorney claimed that the court had the discretion to make a downward departure based on Rudolph's alleged rehabilitation in prison. The court ruled that it lacked the legal authority to depart downward on the basis of post-sentence rehabilitation. Next, the district court considered the sentence enhancement and agreed with the government. The court resentenced Rudolph on counts one and two, calculating a new offense level of 24 (paired with Rudolph's criminal history category of V). It sentenced Rudolph to 92 months in prison (from a range of 92 to 115 months). We turn to the merits of Rudolph's timely appeal.

## II. Rudolph's Motion for a Downward Departure on the Basis of Post–Sentence Rehabilitation

### A

In its opinion in *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), the Supreme Court listed several questions that a sentencing court should ask when considering a departure from the calculated guidelines range. If a court believes that a feature of a case potentially takes it outside the "heartland" of the Guidelines, the court should determine whether the Sentencing Commission has forbidden, encouraged, or discouraged departures on the basis of the feature, or whether the Guidelines do not even mention the feature. *See id.* at 95–96, 116 S.Ct. 2035. During the resentencing hearing, Rudolph petitioned for a downward departure from the sentencing guidelines range, alleging that he had rehabilitated himself in prison since his conviction and sentence. The district court refused, expressing its belief that it lacked the discretion to depart downward on the basis of Rudolph's alleged post-sentence rehabilitation: "Well, I don't think I have discretion here.... I see no basis for a downward departure." Unless a district court mistakenly believes that it lacks the legal authority to depart below the guidelines range, this court may not review a district court's decision not to depart. *See, e.g., United States v. Landers*, 39 F.3d 643, 649 (6th Cir.1994). We hold that the district court erred, however, and that it had the legal authority to depart below the guidelines range on the basis of a defendant's post-sentence rehabilitation.

Rudolph's appeal raises the question of whether a district court has the discretion to depart downward on the basis of a defendant's rehabilitative efforts made after the defendant received his initial sentence. Defendants may engage in rehabilitative efforts at several stages: post-offense, post-arrest, post-conviction, and post-sentence. Most courts condense the possibilities into two categories: "post-offense," referring to efforts made before sentencing, and "post-sentencing" (occasionally referred to as "post-conviction"), referring to efforts made after sentencing. Especially in light of the Supreme Court's decision in *Koon*, the circuit courts of appeal that have considered the matter have

permitted downward departures for post-offense rehabilitation. *See, e.g., United States v. Brock*, 108 F.3d 31, 35 (4th Cir. 1997) (holding that *Koon* overruled prior circuit law to the contrary); *see also United States v. Blake*, No. 97–6406, 1999 WL 503531, at *2 (6th Cir. July 9, 1999) (unpublished) (agreeing with the reasoning of *Brock*).

The circuits have split, however, on the question of whether courts may grant downward departures on the basis of post-sentence rehabilitation. *Compare United States v. Roberts*, No. 98–8037, 1999 WL 13073, at **6–7 (10th Cir. Jan.14, 1999) (unpublished) (permitting downward departure), *and United States v. Green*, 152 F.3d 1202, 1207 (9th Cir.1998) (same), *and United States v. Rhodes*, 145 F.3d 1375, 1379 (D.C.Cir.1998) (same), *and United States v. Core*, 125 F.3d 74, 77–78 (2d Cir.1997) (same), *cert. denied*, —— U.S. ——, 118 S.Ct. 735, 139 L.Ed.2d 672 (1998), *and United States v. Sally*, 116 F.3d 76, 80 (3rd Cir.1997) (same), *with United States v. Sims*, 174 F.3d 911, 913 (8th Cir.1999) (forbidding downward departure), *and Rhodes*, 145 F.3d at 1384 (Silberman, J., dissenting).[1] In a recent unpublished decision, a panel of this court raised the issue but decided the matter on other grounds, ruling that because the district court believed it had the authority to depart downward on the basis of post-sentence rehabilitation, this court could not review its decision not to depart. *See United States v. Little*, No. 98–1164, 1999 WL 426883, at *6 (6th Cir. June 15, 1999) (unpublished).

We believe that, given the explication in the *Koon* opinion, a district court has the discretion to depart downward on the basis of post-sentence rehabilitation. "[T]he

[Sentencing] Commission chose to prohibit consideration of only a few factors, and not otherwise limit, as a categorical matter, the considerations which might bear upon the decision to depart." *Koon*, 518 U.S. at 94, 116 S.Ct. 2035. Thus, district courts may depart downward because neither the Sentencing Guidelines nor any statute "explicitly bars consideration of post-sentence rehabilitation." *Rhodes*, 145 F.3d at 1379. Further, an inconsistency would arise if courts permitted departures for post-offense rehabilitation but prohibited departures for post-sentence rehabilitation. *See, e.g., Green*, 152 F.3d at 1207. The preceding reasons, bolstered by *Koon*'s broad sweep, have force, and convince us to follow the Second, Third, Ninth, and D.C. Circuits (and the reasoning expressed in an unpublished decision of the Tenth Circuit), and to hold that a district court may depart downward on the basis of a defendant's post-sentence rehabilitation.

### B

We pause to address the objections of the government, which mirror those that the Eighth Circuit expressed in its opinion in *Sims*, 174 F.3d at 913. We recognize that not every defendant will have the opportunity to move for a downward departure on the basis of post-sentence rehabilitation. Although most defendants will have the opportunity to move at sentencing for a downward departure based on post-offense rehabilitation, comparatively few defendants have the opportunity to move for a downward departure on the basis of rehabilitation occurring after the imposition of a sentence, because comparatively few defendants are resentenced— the opportunity arises only after an appeal

---

1. The cases have different procedural postures: *Sims, Roberts*, and *Core* involve appeals from resentences following the granting of motions made pursuant to 28 U.S.C. § 2255, *Green* involves an appeal from a resentencing ordered after the defendant's direct appeal, *Rhodes* involves an appeal after the Supreme Court vacated the defendant's initial sentence, and *Sally* involves a defendant's direct appeal

from his sentence, because Sally moved for a departure based on post-conviction (and presentence) rehabilitation (thus, the holding does not technically concern post-sentence motions, although the tenor of the opinion suggests that the court intends the holding to cover post-sentence conduct). *See Sally*, 116 F.3d at 80–81.

where there is a remand for resentencing, a defendant successfully prosecutes a collateral attack, or in infrequent occurrences such as the passage of a pertinent and retroactive amendment to the sentencing guidelines. Opponents of the downward departure view the discrepancy with distaste, contending that it becomes available only through fortuity, and that its presence will create sentencing disparities among similarly-situated defendants. *See, e.g., Sims,* 174 F.3d at 912; *Rhodes,* 145 F.3d at 1384 (Silberman, J., dissenting).

Although both objections have force, neither compels forbidding the possibility of downward departure. While it may seem "fair" to allow all rehabilitated defendants to plead their case, the approved practice of permitting departures for post-offense rehabilitation has already introduced unfairness and disparity into the granting of downward departures: one defendant may have no chance to rehabilitate himself before sentencing (*e.g.,* his case might rapidly proceed to trial and sentence), whereas another defendant might face lengthy (yet constitutionally acceptable) pre-trial and pre-sentence delays that permit her to avail herself of many rehabilitative services before her sentencing. Allowing the post-sentence departure will probably encourage attempts at rehabilitation (or at least attempts at appearing rehabilitated), so perhaps a utilitarian calculus supports the departure. Further, considering post-sentence conduct at resentencing exposes defendants to risks that resentenced defendants do not share: presumably, a district court could depart upwards for post-sentence misbehavior. *Cf. Green,* 152 F.3d at 1207 n. 6 (noting that courts may increase, as well as decrease, sentences when resentencing). As for the disparity in sentences, it technically does not arise. Similarly-situated defendants receive identical sentences, but the comparison cannot persist after a judicial determination that the defendant merits *resentencing.* "[I]t makes no sense to preclude a sentencing judge from considering facts pertinent to resentencing that had not yet arisen at the time of the original sentence." *United*

*States v. Hasan,* 41 F.Supp.2d 1004, 1020 (D.Neb.1999); *see also Rhodes,* 145 F.3d at 1381 ("Distinguishing between prisoners whose convictions are reversed on appeal and all other prisoners hardly seems 'unwarranted.' ").

Opponents of permitting a downward departure also contend that the Sentencing Guidelines and relevant statutes forbid courts from sentencing or resentencing defendants based on rehabilitative concerns. A weak version of the argument contends that the present determinative sentencing framework stems from the recognition of the failure of the rehabilitative ideal, and that the framework forbids district courts from assigning sentences with rehabilitation in mind. *See, e.g.,* 18 U.S.C. § 3582(a) ("The court, in determining whether to impose a term of imprisonment, and ... in determining the length of the term, shall consider the factors set forth in section 3553(a) ..., recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation."); 28 U.S.C. § 994(k) ("The [Sentencing] Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant...."); *United States v. Mogel,* 956 F.2d 1555, 1563 (11th Cir.) ("Rehabilitative considerations have been declared irrelevant for purposes of deciding whether or not to impose a prison sentence and, if so, what prison sentence to impose."), *cert. denied,* 506 U.S. 857, 113 S.Ct. 167, 121 L.Ed.2d 115 (1992). The weak version of the argument has little force against a downward departure for post-sentence rehabilitation, however, because rehabilitative concerns did not influence the defendant's initial sentence, and the court does not impose the new sentence in order to promote rehabilitation (rather than being a gamble on the prospective efficacy of rehabilitative methods, the departure merely recognizes the empirical success of a specific defendant's attempts at rehabilitation). Also, the departure arguably satisfies a goal of the Sentencing Reform Act by modifying a

determinate sentence to account for mitigating factors. *See, e.g.,* 28 U.S.C. § 991(b)(1)(B) (outlining one of the "purposes of the United States Sentencing Commission"—namely, to "avoid[ ] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices").

The stronger argument contends that the abolition of parole prohibits courts from reducing sentences to account for a defendant's post-sentence rehabilitation. A circuit judge has suggested that "the very passage of the Sentencing Reform Act of 1984, which abolished parole and substantially reduced and restructured good behavior adjustments, implicitly precludes a district court from considering post-conviction behavior in imposing sentences." *Rhodes,* 145 F.3d at 1375 (Silberman, J., dissenting). The Eighth Circuit agreed when it held that defendants could not obtain departures for post-sentence rehabilitation. *See Sims,* 174 F.3d at 913.

▪ The preceding argument's reliance on the "implict[ ] preclus[ion]" of downward departure clashes with the Guidelines' implicit allowance of all downward departures not explicitly forbidden. *See, e.g., Koon,* 518 U.S. at 94, 116 S.Ct. 2035 ("[T]he Commission chose not to prohibit consideration of only a few factors, and not otherwise to limit, as a categorical matter, the considerations which might bear upon the decision to depart."). We find *Koon*'s lesson more explicit than that of the abolition of parole. *See, e.g.,* Rhodes, 145 F.3d at 1382 ("Given rehabilitation's continuing role in sentencing, and in the absence of any contrary directive from the Commission, we decline to read the Act's abolition of parole and restructuring of good time credits as definitive congressional statements that district courts may not account for post-conviction rehabilitation.").

## C

Although district courts may depart downward for post-sentence rehabilitation, they may do so only rarely. The *Koon* opinion classified departures into those that the Guidelines forbid, those that the Guidelines encourage, those that the Guidelines discourage or otherwise already take into account by an applicable Guideline, and those that the Guidelines do not mention. *See Koon,* 518 U.S. at 95–96., 116 S.Ct. 2035. The Guidelines neither encourage nor forbid departure for post-sentence rehabilitation. The Guidelines appear to take post-sentence rehabilitation into account (and possibly also discourage departure on that basis), however. Thus, the *Koon* classification limits post-sentence rehabilitation departures to instances when "the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Koon,* 518 U.S. at 96, 116 S.Ct. 2035. *See Rhodes,* 145 F.3d at 1383; *Sally,* 116 F.3d at 80–81 ("[E]xceptional or extraordinary examples of rehabilitation efforts may well warrant a downward departure.") (footnote omitted); *cf. Green,* 152 F.3d at 1208 (approving, without seeming to adopt, the approaches of the Second and D.C. Circuits). *But see Roberts,* 1999 WL 13073, at *6 (concluding that the Guidelines do not mention post-sentence rehabilitation, and that therefore a court should depart when "the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole" persuade the court "to take the case out of the Guideline's heartland") (quoting *Koon,* 518 U.S. at 96, 116 S.Ct. 2035).

USSG § 3E1.1 provides the basis for the conclusion that the Guidelines take post-sentence rehabilitation into account. A recent amendment to the application notes of USSG § 3E1.1 ("Acceptance of Responsibility") reads as follows: "In determining whether a defendant qualifies [for a reduction due to acceptance of responsibility], appropriate considerations include, but are

not limited to, the following: ... (g) post-offense rehabilitative efforts (*e.g.*, counseling or drug treatment)...." USSG § 3E1.1, comment. (n.1(g)). The District of Columbia Circuit recognized that the phrase "post-offense rehabilitative efforts" involves "a concept linguistically broad enough to cover post-conviction rehabilitation," although it noted that § 3E1.1's second application note focuses the determination "primarily upon pretrial statements and conduct." *Rhodes*, 145 F.3d at 1383. The District of Columbia Circuit chose to follow the reasoning of the Third Circuit (and of the Fourth Circuit in *United States v. Brock*, 108 F.3d 31 (4th Cir.1997), a case involving departures for post-offense rehabilitation), and "read the Commission's mentioning of a factor within the context of a relatively narrow departure Guideline to mean that the factor represents an appropriate sentencing consideration, as well as to imply that courts may depart beyond the terms of the Guideline, but only if the factor is present to an 'unusual' extent." *Rhodes*, 145 F.3d at 1383; *see also Sally*, 116 F.3d at 81–82. The Second and Ninth Circuits did not clearly adopt a standard, *see Green*, 152 F.3d at 1208; *Core*, 125 F.3d at 76–79, and the Tenth Circuit (in an unpublished decision) rejected without explanation the approach of the Third, Fourth, and District of Columbia Circuits. *See Roberts*, 1999 WL 13073, at *6.

█ The District of Columbia Circuit's reasoning requiring "exceptional or extraordinary examples" of rehabilitation appears most sound: "Treating post-offense rehabilitation as mentioned by a departure within the Guidelines, thus implying that such departures are either 'discouraged' or 'encouraged but already taken into account,' not only is faithful to *Koon*, but also accurately reflects the content of the Guidelines." *Rhodes*, 145 F.3d at 1383. We emphasize, as do the opinions in *Rhodes* and *Sally*, that mere rehabilitation

does not warrant departure. Instead, the rehabilitation must far exceed that required for the acceptance-of-responsibility reduction, and must seem so "extraordinary or exceptional," *Sally*, 116 F.3d at 82, as to warrant alteration of a sentence. The rehabilitation must "exceed 'to an exceptional degree' the rehabilitative efforts of all defendants," *Rhodes*, 145 F.3d at 1383; successful completion of mandatory work or GED programs cannot support the departure, as nothing "extraordinary" attaches to the completion of one's expected duties. *Cf. ibid.* (citing Federal Bureau of Prisons Program Statements requiring certain prisoners to work and obtain GEDs). Thus, a defendant (as movant) must prove both his rehabilitation and that, when compared to other defendants, his rehabilitative efforts appear so extraordinary as to merit a departure. The departure cannot simply reward rehabilitation—it only can use the defendant's extraordinary rehabilitation to justify departing from the determinate sentencing framework.[2]

### D

█ We recognize that, as a general matter, when a district court resentences a defendant, it has the discretion to depart downward on the basis of extraordinary post-sentence rehabilitation. When the resentencing follows a remand from this court, the district court will have the discretion to grant the departure, unless this court limited the scope of the remand. *Cf., e.g., United States v. Jennings*, 83 F.3d 145, 151 (6th Cir.) ("On remand, the only constraint under which the District Court must operate, for the purposes of resentencing, is the remand order itself. Where the remand does not limit the District Court's review, sentencing is to be de novo."), *cert. denied*, 519 U.S. 975, 117 S.Ct. 411, 136 L.Ed.2d 324 (1996); *United States v. Duso*, 42 F.3d 365, 368 (6th Cir.

---

**2.** A corollary: mere recitation of achievements and awards will not often present helpful evidence of rehabilitation. A movant must compare his rehabilitation to that of other defendants, and must explain the import of

his accomplishments—the departure does not exist to reward good conduct; rather, it accounts for the rare occasions when a defendant's rehabilitation takes him out of the heartland of the guidelines.

1994).[3] In Rudolph's case, however, the district court encountered the motion for downward departure in a resentencing held subsequent to the court's grant of Rudolph's motion for relief pursuant to 28 U.S.C. § 2255.

■ In his § 2255 motion, Rudolph did not request a downward departure. Even if he had, however, post-sentence rehabilitation would not provide a basis for relief under § 2255, because such rehabilitation does not constitute ground for collateral attack on a defendant's sentence. *See, e.g., United States v. Dugan,* 57 F.Supp.2d 1207 at 1209–10 (D.Kan.1999) (compiling cases). In Rudolph's case, the district court granted the § 2255 motion to vacate Rudolph's § 924(c) conviction, and then held a resentencing hearing to impose Rudolph's new sentence. At the resentencing, the district court ruled that it lacked the discretion to consider Rudolph's motion for downward departure.

■ We hold that, after a district court grants a motion for relief under § 2255, it may exercise its discretion to entertain during resentencing a motion for downward departure due to post-sentence rehabilitation. Much as a district court conducts de novo resentencing after a general remand, *see, e.g., Jennings,* 83 F.3d at 151, so too may it choose to broaden the scope of resentencing after it chooses to grant relief pursuant to § 2255. *See United States v. Jones,* 114 F.3d 896, 897 (9th Cir.1997) (permitting, during resentencing pursuant to § 2255, the re-imposition of a fine on the basis of information developed after sentencing) ("[T]he statute gives district judges wide berth in choosing the proper scope of post–2255 proceedings."); *United States v. Moore,* 83 F.3d 1231, 1234–35 (10th Cir.1996) (holding that, upon vacating a sentence pursuant to § 2255, a district court must exercise its discretion to determine the appropriate scope of re-sentencing proceedings). *Cf. Pasquarille v. United States,* 130 F.3d 1220, 1222 (6th Cir.1997) (permitting the district court to revisit a defendant's "entire aggregate sentence" composed of a "single comprehensive sentencing plan" when resentencing pursuant to a successful § 2255 motion to vacate). We note that our holding comports with the practice of the Second Circuit, *see Core,* 125 F.3d at 75, 77 (ruling that the district court had the discretion to consider a motion for a downward departure on the basis of post-sentence rehabilitation) ("When the trial court undertook to resentence [the defendant] after vacating his § 924(c) conviction, it was required to consider him as he stood before the court at that time."), and the reasoning of the Tenth Circuit as expressed in an unpublished opinion, *see Roberts,* 1999 WL 13073, at *6 (holding that the district court had the discretion to grant a downward departure for post-sentence rehabilitation) ("[A]fter vacating a § 924 conviction, a district court may limit the scope of the sentencing proceedings to certain issues, but it 'is entitled to visit a petitioner's entire sentence, not just the challenged portion.' ") (quoting *United States v. Easterling,* 157 F.3d 1220, 1224 (10th Cir.1998)).

## E

To summarize: as a general matter, a district court has the discretion to depart

---

**3.** Although this circuit has ruled that, on remand, a district court must conduct sentencing de novo unless this court directs otherwise, a minority view limits the scope of resentencing on remand to the issues relevant to the decision of the appeals court. *See, e.g., United States v. Marmolejo,* 139 F.3d 528, 531 (5th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 622, 142 L.Ed.2d 561 (1998). The minority view relies in part on a theory of waiver, however, *see United States v. Whren,* 111 F.3d 956, 959–60 (D.C.Cir.1997) (adopting the Seventh Circuit's waiver approach), *cert. denied,* —— U.S. ——, 118 S.Ct. 1059, 140 L.Ed.2d 120 (1998), that does not apply to motions for departure due to post-sentence rehabilitation. By definition, a defendant cannot raise evidence of post-sentence rehabilitation at his first sentencing hearing; thus, even if a district court may not consider previously-waived issues at resentencings, it may consider motions for departure based on facts not available to the defendant at his first sentencing.

on the basis of a defendant's rehabilitation occurring after the imposition of sentence.[4] The rehabilitation must far exceed that required for eligibility for the acceptance-of-responsibility sentence reduction of USSG § 3E1.1, and must seem extraordinary or exceptional when compared to the rehabilitation of other defendants. A court may not grant the departure to reward a defendant's efforts at rehabilitation; rather, it may grant the departure only when the extraordinary rehabilitation takes the case out of the heartland anticipated by the guidelines. If the district court resentences the defendant on remand from this court, the remand order determines the scope of the proceedings, and a limited remand order will preclude consideration of requests for downward departure. If the district court resentences the defendant after granting a motion pursuant to 28 U.S.C. § 2255, the district court must exercise its discretion and decide whether it will consider a motion for downward departure on the basis of post-sentence rehabilitation.

Thus, in the remand of the instant case, the district court will decide whether it wishes to entertain Rudolph's motion in the post–2255 resentencing proceeding. If the court chooses to hear the motion, it may depart if it finds that Rudolph's case seems extraordinary or exceptional. We note as a matter of law, however, that Rudolph has yet to proffer evidence that would justify a downward departure. Rudolph showed that the National Library of Poetry published his work and twice awarded him its Editor's Choice Award, he received a strong evaluation from his work

supervisor, and he passed a GED examination. Even if we assume that Rudolph produces excellent poetry (and that he did not produce excellent poetry in the past, when committing the crimes of conviction and those that placed him into a criminal history category of V), Rudolph's literary prowess has no bearing on rehabilitation (e.g., the jury did not convict Rudolph of writing bad poetry). Cf. WILLIAM SHAKESPEARE, THE TRAGEDY OF JULIUS CAESAR act 3, sc. 3 ("Tear him for his bad verses, tear him for his bad verses.").[5] As for his work record and GED, the District of Columbia Circuit's opinion in *Rhodes* anticipates both grounds, noting that Federal Bureau of Prisons Program Statements require able inmates to labor and unschooled inmates to take classes. *See Rhodes*, 145 F.3d at 1383–84. If the district court chooses to entertain Rudolph's motion, he will have an opportunity to supplement his presentation and show that his rehabilitation is extraordinary.

### III. Rudolph's Constitutional Challenges

Rudolph contends that "due process and double jeopardy" prevented resentencing on counts one and two. Our opinion in *Pasquarille v. United States*, 130 F.3d 1220, 1223 (6th Cir.1997), rejected these arguments when brought by Pasquarille, observing that, by challenging his § 924(c) conviction, a "defendant waive[s] whatever expectation of finality he had in the sentence on the related drug conviction because the sentences are interdependent." *Ibid.* In *Pasquarille*, we observed that, "By challenging the § 924(c) conviction, the defendant assumed the risk that, al-

---

**4.** Although Rudolph petitioned for a downward departure, our reasoning would apply to requests by the government for an upward departure due to a defendant's exceptional or extraordinary post-sentence behavior.

**5.** Further, we question the value of the National Library of Poetry's "Editor's Choice Award" as an indication of literary merit. Reports in the popular press cast doubt on the screening process and selection criteria of the National Library of Poetry. *See, e.g.,* Jonathan Bing, *Vanity Fare*, VILLAGE VOICE, May 26,

1998, 1998 WL 2363979; Ellen Emry Heltzel, *Contest That All "Win" Gives No Honor*, PORTLAND OREGONIAN, Apr. 19, 1998, at E7; Al Sicherman, *Of Vanity and Verse: Firm Makes Mint Putting Bad Poems in Print*, STAR-TRIBUNE (MPLS.-ST.PAUL), July 22, 1996, at 1E; Melissa Fletcher Stoeltje, *Poetry Submissions Prompt More Solicitations*, HOUSTON CHRON., May 10, 1996, 1996 WL 5602886 (quoting Darlene Mullens, the Library's manager of customer service and data entry, as saying that "English majors with master's degrees" judge the poetry contests).

though his overall sentence would be reduced, the sentence on the drug count alone could be revisited and enhanced in light of the changed legal situation." *Ibid.* We also dismissed Pasquarille's due process challenge, explaining that, "By resentencing the defendant, the district court simply put him back in the position he would have faced under the law if the § 924(c) conviction that was later deemed legally unsound, had not prohibit[ed] the enhancement." *Ibid.* Thus, we uphold the district court's application of the sentence enhancement.

Next, according to Rudolph, at the resentencing hearing, the court "did not inquire as to Mr. Rudolph's desire for allocution." Rudolph contends that he had a right to allocute at his resentencing, and that he "could have given the Court more information concerning his rehabilitation had he spoken directly to the Court," although he does not hint as to the nature of the additional information. This court has already held that a defendant has no constitutional or statutory right of presence or allocution at resentencing following a § 2255 proceeding. *See Pasquarille*, 130 F.3d at 1223. If, on remand, the district court chooses to exercise its discretion and consider Rudolph's request for a downward departure, the court may find it helpful to permit Rudolph to allocute, if the court believes that the submission of documentary evidence will not suffice.

## IV. Conclusion

Although the district court properly enhanced Rudolph's sentence, and need not have permitted Rudolph to allocute at resentencing, it incorrectly believed that it lacked the discretion to depart downward on the basis of Rudolph's alleged post-sentence rehabilitation. We AFFIRM the judgment of the district court insofar as it enhanced Rudolph's sentence, and REMAND to require the district court to exercise its discretion to decide whether to entertain Rudolph's motion for a downward departure.