313 F.3d 561
 UNITED STATES OF AMERICA, Appellee,
v.
JoAnn McCoy, Appellant.
 No. 01-3052.
 United States Court of Appeals, District of Columbia Circuit.
 Argued September 17, 2002.
 Decided December 20, 2002.
 
 Appeal from the United States District Court for the District of Columbia (No. 98cr00082-01).
 Lisa B. Wright, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was A. J. Kramer, Federal Public Defender.
 Elizabeth Trosman, Assistant U.S. Attorney, argued the cause for appellee. With her on the briefs were Roscoe C. Howard, Jr., U.S. Attorney, John R. Fisher, Roy W. McLeese III, and Suzanne G. Curt, Assistant U.S. Attorneys.
 Before: GINSBURG, Chief Judge, EDWARDS, SENTELLE, HENDERSON, RANDOLPH, ROGERS, TATEL, and GARLAND, Circuit Judges, and WILLIAMS, Senior Circuit Judge.
 Opinion for the Court filed by Senior Circuit Judge WILLIAMS.
 Dissenting opinion filed by Circuit Judge HENDERSON with whom Chief Judge GINSBURG and Circuit Judge SENTELLE join.
 STEPHEN F. WILLIAMS, Senior Circuit Judge:
 
 
 1
 We here address the scope of resentencing after a remand from the court of appeals under the following conditions: (1) the defendant seeks to raise a contention that was contingently relevant in the initial sentencing (but the contingency did not then materialize); (2) defendant did not raise the contention in that sentencing; and (3) the district court's action on remand renders the contention determinative (if it is allowable and correct). The source of the contingency here is the Sentencing Guidelines' complex treatment of multiple "groups" of offenses. See U.S.S.G. § 3D1.4.
 
 
 2
 We conclude that the defendant's ability to raise her contingent issue here depends upon whether she could establish "good cause," within the meaning of Rule 32(b)(6)(D) of the Federal Rules of Criminal Procedure, for not having raised it sooner. The district court never considered the good cause issue. Rather than remand to the district court, however, we remand to the panel. If it finds that the merits claim is not a winner, there will be no need for the district court to take the matter up yet again.
 
 
 3
 * * *
 
 
 4
 JoAnn McCoy was convicted on two charges of making false statements in a loan application and on one count of perjury. Her case was referred to a probation officer, and the process of generating a Presentence Report ("PSR") proceeded along the lines prescribed by Rule 32(b)(6) (renumbered as Rules 32(e)-(g), per amendments effective December 1, 2002). The probation officer circulated a PSR (the "original PSR") to the defendant and counsel on both sides, see Rule 32(b)(6)(A), and the prosecution and the defense both objected to various aspects, see Rule 32(b)(6)(B). The most critical objection was the prosecution's request for an enhancement for obstruction of justice, to be applied to both the crime "groups" (false statements and perjury). The probation officer added the enhancements and circulated a new version of the PSR (the "revised PSR") on January 22, 1999. See Rule 32(b)(6)(C).
 
 
 5
 The revised PSR calculated a "combined" offense level of 21. Twenty levels derived from the two false statement counts — the false statement "group" for purposes of the multi-group adjustment. U.S.S.G. § 3D1.4. These 20 levels comprised 14 for the base offense and the size of the loss, plus three upward adjustments of two levels each — for McCoy's "managerial role" in directing other participants, for her "more than minimal planning," and for her obstruction of justice.
 
 
 6
 The second "group" was for McCoy's perjury conviction and totaled 14 levels, 12 for the base offense and two for obstruction of justice, and to a term of supervised release.
 
 
 7
 Finally, the revised PSR combined the two groups under "multiple count adjustment" provisions of U.S.S.G. § 3D1.4, adding one point to the false statement group for a "combined offense level" of 21. Simplifying the arcane formula of § 3D1.4 for purposes of this case, we may say that it calls for no upward adjustment of the count for the more serious group if the difference between the two groups is nine or more levels, a one-point upward adjustment if the difference is five to eight levels, and a two-level adjustment if the difference is zero to four levels. The logic of this is plainly that as the severity of the less serious group gets closer to that of the more serious, it becomes appropriate to add, and to add more, to the combined offense level.
 
 
 8
 Once the revised PSR was circulated, both sides commented on the probation officer's recommendation, through memoranda and at the sentencing hearing itself, as provided by Rule 32(c)(1). McCoy objected to all the enhancements, including the ones for obstruction of justice. She did not, however, object to the obstruction enhancement on a ground that was specific to the perjury group. Application Note 7 of the Guidelines section governing obstruction, U.S.S.G. § 3C1.1, explains that for a limited number of crimes, including perjury but not false statements, the obstruction bump should not be added unless "a significant further obstruction occurred during the ... prosecution ... of the obstruction offense [here perjury] itself." Victory on a potential Application Note 7 argument would have been useful if but only if other sentencing adjustments had occurred yielding a particular alignment of the two groups (as a practical matter, a gap of three or four levels, as opposed to the initial gap of six).
 
 
 9
 The district court rejected all of McCoy's objections and sentenced her to concurrent terms of 37 months on the false statement charges and 24 months on the perjury charge.
 
 
 10
 McCoy appealed her conviction, objecting to all the enhancements, see United States v. McCoy, 242 F.3d 399, 403 (D.C.Cir.2001) ("McCoy I") but again not raising the perjury-specific attack on the obstruction enhancement. Absent a change in the constellation of groups, lopping a couple of levels off the perjury calculation was of no moment. As it turned out, she did prevail on one enhancement, persuading us that the district court might well have applied an incorrect standard in assessing the "managerial role" bump. Id. at 410. Accordingly we remanded to the district court to reconsider that issue. Id. at 411.
 
 
 11
 On remand, the district court instructed the probation officer to update the PSR in light of McCoy I, and the probation officer read that decision as holding that no managerial role enhancement should apply. The government acquiesced in the elimination of that enhancement, and the probation officer prepared an updated version of the PSR (the "resentencing PSR") that reduced to 18 the sentencing level for the false statement offense. But now the gap between the more serious and the less serious groups was four points instead of six, so the proper multi-group adjustment was two points instead of one. Absent further changes, the combined offense level would be 20.
 
 
 12
 When the probation officer circulated the resentencing PSR reflecting the elimination of the managerial role bump and the higher multi-group adjustment, McCoy raised her perjury-specific attack on the obstruction enhancement. Victory on this issue would now be determinative. Overturning that enhancement would restore a six-point gap, causing the overall offense level to settle at 19 points. The government does not deny that within the resentencing procedure McCoy's claim was timely and in compliance with Rule 32.
 
 
 13
 The government objected, however, on the ground that McCoy had not raised the point in her first appeal. McCoy responded that at the time of that appeal, victory on the perjury-specific issue would have had no direct consequence. The district court did not address either of these arguments, but ruled simply that "the only issue presently before the court" was to "resentence without the two-level [managerial role] enhancement."
 
 
 14
 On McCoy's second appeal the major issue was how to apply our precedent, United States v. Whren, 111 F.3d 956 (D.C.Cir.1997), to these facts. There we had said that on a remand for resentencing the district court "may consider only such new arguments or new facts as are made newly relevant by the court of appeals' decision — whether by the reasoning or by the result." Id. At 960. The panel divided over the question whether an argument that in the first sentencing had been potentially relevant, but never immediately so, qualified as "newly relevant." See United States v. McCoy, 280 F.3d 1058, 1062 (D.C.Cir.2002) ("McCoy II"). We granted McCoy's petition for rehearing en banc to clarify the court's position on that issue.
 
 
 15
 * * *
 
 
 16
 Before turning to the merits we note that the government objected to rehearing en banc on the ground that McCoy's completion of her prison sentence had mooted the issue. But the controlling statutes explicitly make the Guidelines computation relevant to McCoy's supervised release, which persists to this day:
 
 
 17
 Factors To Be Considered In Including a Term Of Supervised Release. The court, in determining whether to include a term of supervised release, and, if a term of supervised release is to be included, in determining the length of the term and the conditions of supervised release, shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), and (a)(6).
 
 
 18
 18 U.S.C. § 3583(c) (emphasis added). The most obviously relevant cross-referenced section is § 3553(a)(4)(A), which refers to "the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission...." Id. § 3553(a)(4)(A). Resentencing under a revised Guidelines computation clearly could benefit McCoy.
 
 
 19
 * * *
 
 
 20
 The government argues that McCoy should be barred by her failure to raise the Application Note 7 argument on her initial appeal. But Whren was clearly directed to the defendant's failure to raise an issue "at the original sentencing hearing," 111 F.3d at 959, not omission from a prior appeal. We see no basis for finding waiver from failure to raise before the appeals court an issue on which the district court never ruled and which never became determinative before the district court. Such a rule would require appellants to include a wide range of purely contingent arguments. Since appeals are only rarely successful — in this circuit, only 12.9% of all appeals result in a reversal of the district court, and nationally, this figure falls to 9.5%, see Judicial Business of the U.S. Courts 102 tbl. B-5 (2000) — the resulting clutter of appellate briefs would be considerable. Although not treating an omission as a waiver will occasionally cause the court to hear an otherwise unnecessary successive appeal, the gain in simplification of initial appeals seems to us well worth it.
 
 
 21
 Turning to the issue of the initial sentencing itself, the government argues that under Rule 32 of the Federal Rules of Criminal Procedure McCoy's failure to raise the Application Note 7 argument there operated as an effective waiver of that argument. Although the government didn't raise Rule 32 earlier, the Whren test must be understood in light of that rule, and both parties have articulated their views of the Rule's role. We therefore take it into account in resolving the case.
 
 
 22
 The government specifically invokes Rule 32(b)(6)(B), but this is plainly wrong. At that stage the defendant had before her only the original PSR, which did not propose any bump for obstruction at all. Rule 32(b)(6)(B) only requires a party to "communicate ... any objections to ... sentencing classifications ... contained in or omitted from the presentence report," not objections to adverse classifications as yet unmentioned.
 
 
 23
 But defendant still had an opportunity to raise her present objection to the obstruction bump. Rule 32(c)(1) (renumbered as Rule 32(i)) requires the district court to give the parties "an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence." In fact McCoy exercised this opportunity as to many objections — between the filing of the revised PSR on January 22, 2000 and the actual sentencing on June 3, 2000.
 
 
 24
 Rule 32(c)(1)'s language, quoted above, provides a broad opportunity to comment, and we think McCoy's perjury-specific contention clearly qualified. It had the potential to affect her sentence. And we note that Rule 32(c)(1) anticipates that objections not immediately affecting the sentence will be made, for its third sentence instructs the district court that it must, "[f]or each matter controverted ... make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." Id.
 
 
 25
 But McCoy's failure to raise the claim in time for the sentencing hearing does not necessarily mean that she has lost the point forever. Rule 32(b)(6)(D) (renumbered as Rule 32(i)(1)(D)) provides that "[f]or good cause shown, the court may allow a new objection to be raised at any time before imposing sentence." Although this subsection's location as a part of Rule 32(b)(6) might suggest that it refers only to points that parties failed to make at the Rule 32(b)(6)(B) opportunity, both common sense and the language "at any time" indicate a broader coverage.
 
 
 26
 To be sure, it may be fairly uncommon for an omission at the Rule 32(c)(1) stage to be even susceptible to the possibility of relief under the "good cause" standard of Rule 32(b)(6)(D). Typically the next stage after that opportunity will be appeal, in which a party's previously omitted claims will be governed by the plain error standard. But it is easy to imagine a case where the opportunity provided by Rule 32(c)(1) involves multiple stages, e.g., a briefing schedule that follows the usual court of appeals pattern (opening-response-reply). And here, of course, a resentencing follows the defendant's neglect of her Rule 32(c)(1) opportunity. We see no reason why omissions occurring at the Rule 32(c)(1) stage should be governed by a standard more severe than good cause, unless of course there is some affirmative reason for a more demanding standard. Compare, e.g., Johnson v. United States, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (applying plain error standard on appeal in reviewing a determination of the trial court to which defendant did not object, but which was declared erroneous between trial and appeal); United States v. Dale, 140 F.3d 1054, 1056 (D.C.Cir.1998) ("cause and prejudice" standard governs an argument raised for the first time on collateral review and based on a rule adopted after the conclusion of the direct appeal).
 
 
 27
 Thus a proper application of Rule 32 required the district court in resentencing to decide whether McCoy's failure to raise her Application Note 7 argument was "for good cause shown." We need not address how that standard would have applied if the issue had arisen in the initial sentencing, i.e., if the district court had initially accepted defendant's position on the managerial role bump. We confine ourselves to the good cause issue as it arose at resentencing.
 
 
 28
 Although the phrase "good cause" might suggest that the inquiry concerns only the grounds for the defaulting party's omission, in practice "good cause" inquiries typically range more broadly, addressing (for instance) adverse effects — direct or systemic — on opposing parties or the judiciary. See United States v. Cray, 47 F.3d 1203, 1206-07 (D.C.Cir.1995) (holding that the inquiry for the withdrawal of a guilty plea, characterized as an issue of "good cause," includes consideration of "whether the Government would have been substantially prejudiced"); cf. Yesudian ex rel. United States v. Howard Univ., 270 F.3d 969, 971 (D.C.Cir.2001) (assessment of "excusable neglect" takes into account the "potential impact on judicial proceedings"). In the present context, at least the following factors — many pressed by the parties, though to be sure primarily as arguments in the interpretation of Whren — would seem relevant to the court's exercise of discretion:
 
 
 29
 Against a finding of good cause: (1) To the extent that resolution of the contention required the district court to conduct any factual analysis, as McCoy claims, loss of the benefit of the district court's fresh recollection of the trial would be relevant. (2) If the defendant withheld the claim for strategic reasons (as the government claims, offering in support only a possible contradiction between the Application Note 7 argument and McCoy's sufficiency argument against both obstruction bumps), it would count against finding good cause.
 
 
 30
 In favor of a finding of good cause: (1) As the initial sentencing played out, the Application Note 7 claim would not have been determinative at any time in that sentencing. (2) The claim was doubly contingent, in that it would have been moot if defendant had won all her stated points in the initial sentencing and under several varieties of partial victory (e.g., if the court had ruled in her favor on the evidentiary basis of the obstruction bump, or, indeed, any partial victory except those which left the gap between the offense levels at three or four). (3) Addressing the claim on the merits will have no material effect on any party's future incentives, as only a small fraction of judgments are reversed on appeal, and parties thus have strong incentives to raise their sentencing objections early. (4) A person's liberty is at stake.
 
 
 31
 Factors that could work against the admission of the new objection, but are absent here: (1) Requirements of additional fact-finding. The issue here required no new fact-finding, as it turned on the legal analysis of what constitutes a "significant further obstruction," and, in defendant's view, on a comparison of the offense conduct with defendant's testimony at trial. (2) Disruption of proceedings. In the scenario in which it arose, consideration of the Application Note 7 argument would not have interrupted any proceeding in the slightest. (3) Prejudice. Its consideration on resentencing would not have prejudiced the government in any way.
 
 
 32
 A requirement that the district court consider such factors as these in applying Rule 32(b)(6)(D) does nothing to disturb Whren's principle that parties should raise at sentencing the objections that they have "reason" to raise. Whren, 111 F.3d at 960. But incentives to raise an issue have different strengths, and nothing in Whren suggests that parties must be considered to have "reason" to raise a doubly contingent objection for which the likelihood of any significance is remote. Since an absolute requirement to raise all objections (regardless of the degree of relevance) is likely both to waste judicial resources and work injustice, we have no basis for imposing such a rule, and indeed are barred from doing so under Rule 32(b)(6)(D) as we understand it.
 
 
 33
 In this case, we think it clear that a district court finding of good cause would not have been an abuse of discretion. We need not in the end decide whether the opposite, a finding of no good cause, would have been an abuse of discretion. The Application Note 7 claim has already been presented to the panel in McCoy II, and, if it should lack merit, there will be no need either for an initial good cause ruling by the district court or any review for abuse of discretion. Given the very high probabilities (cited above) that a substantive claim will not prevail, passing that issue back to the panel is likely to consume fewer judicial resources than would a remand to the district court. Accordingly we remand the case to the panel for further proceedings consistent with this opinion.
 
 
 34
 We understand that district judges' individual experience may incline them to different preferences as between a high degree of assurance that even contingent issues are raised early (at the expense of more time spent either resolving them or at least recognizing that the contingency has not materialized) and a low of degree of assurance (with a higher risk of interruptions for late-raised issues and of successive hearings for a single defendant). District judges may adopt standing orders to guide practitioners. See Fed.R.Crim.P. 57(b) (allowing judges to "regulate practice in any manner consistent with federal law, these rules, and the local rules of the district").
 
 
 35
 We note in closing that even an unexcused failure to raise a claim at sentencing would not automatically bar its consideration on appeal. As we said in Whren, such a claim is still subject to review for plain error. 111 F.3d at 960. Moreover, because the impact of a sentencing error tends to be more obvious than that of the typical trial error, and the consequences of a reversal and remand less disruptive, the finding of "prejudice" necessary for plain error review is more readily made. See, e.g., United States v. Saro, 24 F.3d 283, 287-88 (D.C.Cir.1994).
 
 
 36
 The case is remanded to the panel.
 
 
 37
 
 So ordered.
 
 
 
 38
 KAREN LeCRAFT HENDERSON, Circuit Judge, with whom GINSBURG, Chief Judge, and SENTELLE, Circuit Judge, join, dissenting:
 
 
 39
 Under what circumstances may a defendant raise at resentencing an objection that he failed to raise at his original sentencing? Until today, our decision in United States v. Whren, 111 F.3d 956 (D.C.Cir.1997), cert. denied, 522 U.S. 1119, 118 S.Ct. 1059, 140 L.Ed.2d 120 (1998), provided a relatively straightforward and sensible answer to the district judges of this circuit:
 
 
 40
 [U]pon a resentencing occasioned by a remand, unless the court of appeals expressly directs otherwise, the district court may consider only such new arguments or new facts as are made newly relevant by the court of appeals' decision — whether by the reasoning or by the result.
 
 
 41
 Whren, 111 F.3d at 960. At best, the majority opinion misunderstands and misapplies this rule. At worst, the court has jettisoned Whren sub silentio. Accordingly, and for the reasons set forth below, I respectfully dissent.
 
 
 42
 * * *
 
 
 43
 Before a three-judge panel of this court, the appellant, JoAnn McCoy, sought remand and reconsideration of the district court's May 9, 2001 judgment resentencing her to 33 months in prison and five years of supervised release. See generally United States v. McCoy, 280 F.3d 1058 (D.C.Cir.2002) (McCoy II). She contended that the district court erred in refusing to consider her objection — made under Application Note 7 of U.S.S.G. § 3C1.1 — to the obstruction-of-justice enhancement added to her perjury offense level. Although McCoy acknowledged that she did not raise the Note 7 objection at her original sentencing, she argued that the court's remand for resentencing in United States v. McCoy, 242 F.3d 399 (D.C.Cir.) (McCoy I), cert. denied, 534 U.S. 872, 122 S.Ct. 166, 151 L.Ed.2d 114 (2001), made the objection "newly relevant." On February 22, 2002 a divided panel rejected McCoy's contention, holding that she had waived her Note 7 objection by failing to raise it at her original sentencing. On June 12 the full court granted McCoy's petition for rehearing en banc and vacated the panel's judgment. Today the majority (1) holds that "a proper application of Rule 32 required the district court in resentencing to decide whether McCoy's failure to raise her Application Note 7 argument was `for good cause shown,'" maj. op. at 565 (quoting FED. R.CRIM.P. 32(b)(6)(D)); and (2) intimates that McCoy's failure to raise the objection at her original sentencing was for good cause, see id. at 565-66. The court errs on both counts.
 
 I.
 
 44
 I do not believe that Rule 32(b)(6)(D) required the district court at resentencing to decide whether McCoy failed "[f]or good cause shown" to raise the Note 7 objection at her original sentencing. Rule 32(a) provides that "[w]hen a presentence investigation and report are made ... [the] sentence should be imposed without unnecessary delay following completion of the process prescribed by subdivision (b)(6)." FED.R.CRIM.P. 32(a). In turn, the process prescribed by subdivision (b)(6) requires, first, that the probation officer furnish the presentence report to the defendant, the defendant's counsel and the government's counsel. See FED.R.CRIM.P. 32(b)(6)(A). Next, "[w]ithin 14 days after receiving the presentence report," the parties are to "communicate in writing to the probation officer, and to each other," any objection they have to any of the "sentencing classifications [or] sentencing guideline ranges... contained in or omitted from the presentence report." FED.R.CRIM.P. 32(b)(6)(B). Not later than seven days before the sentencing hearing, the probation officer must furnish to the district court and to the parties the revised presentence report and an addendum setting forth unresolved sentencing objections. See FED.R.CRIM.P. 32(b)(6)(C). Finally, pursuant to the provision upon which the majority places so much weight:
 
 
 45
 Except for any unresolved objection under subdivision (b)(6)(B), the court may, at the hearing, accept the presentence report as its findings of fact. For good cause shown, the court may allow a new objection to be raised at any time before imposing sentence.
 
 
 46
 FED.R.CRIM.P. 32(b)(6)(D).
 
 
 47
 Rending a few phrases from the broader context of this scheme, see maj. op. at 564-65, the majority tortures the Rule until it confesses. When Rule 32 is read as a whole, see United Savings Ass'n v. Timbers of Inwood Forest Associates, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) ("Statutory construction ... is a holistic endeavor."), Rule 32(b)(6)(D) is construed more plausibly another way. By requiring "completion of the process prescribed by subdivision (b)(6)" "[w]hen a presentence ... report [is] made under subdivision (b)(1)," the Rule on its face contemplates that where, as here, a presentence report is made at resentencing — the initial report at resentencing being just as much a "presentence ... report" as the initial report at the original sentencing — the parties will participate in a "process" separate from (and no doubt shorter than) the one undertaken at the original sentencing proceeding. FED.R.CRIM.P. 32(a) ("The time limits prescribed in subdivision (b)(6) may be either shortened or lengthened for good cause."). Rule 32(b)(6)(D)'s inclusion as part of the integrated (b)(6) procedure manifests that the reference to "a new objection" includes only those objections unavailable at the Rule 32(b)(6)(B) stage of any one sentencing. See FED.R.CRIM.P. 32(b)(6)(B); see also infra note 1. Thus, I do not read the Rule's "new objection" language to permit a defendant to "revive in the second round an issue he allowed to die in the first." Whren, 111 F.3d at 960.
 
 
 48
 Nothing in the Rule precludes the interpretation I urge. Only one other circuit, the Tenth, adopts the majority's contrary construction. See United States v. Moore, 83 F.3d 1231, 1235 (10th Cir.1996) (holding, in section 2255 context, that district court's refusal to conduct de novo resentencing "was potentially in conflict with the ability of the parties to move to raise new issues with respect to the presentence report at any time prior to the imposition of sentence" where they have "good cause" to do so (citing FED.R.CRIM.P. 32(b)(6)(B))). The Tenth Circuit, of course, adheres to the de novo resentencing approach, see United States v. Smith, 930 F.2d 1450, 1456 (10th Cir.) ("fully de novo resentencing is entirely appropriate" (quotations omitted)), cert. denied, 502 U.S. 879, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991), an approach we explicitly and wisely rejected in Whren:
 
 
 49
 De novo resentencing is in essence a license for the parties to introduce issues, arguments, and evidence that they should have introduced at the original sentencing hearing. The alternative of requiring the parties to raise all relevant issues at the original sentencing hearing serves both equity and efficiency: Each party gets early notice of the other's position, and the district court can resolve all material issues early on — when the record is fresh in mind — and in a single proceeding, thereby minimizing the scope of any second proceeding, i.e., should the first result in a remand.
 
 
 50
 Whren, 111 F.3d at 959-60. I am baffled by the court's willingness to adopt an interpretation of Rule 32(b)(6)(D) that (1) sanctions the wasteful de novo resentencing described above; (2) effectively overturns Whren, which the majority does not even attempt to harmonize with the Rule; (3) was urged by neither party,[1] see infra Part II.A; (4) is not the most natural reading of the Rule; and (5) cuts against the case law of the other "waiver" circuits, which do not even mention the Rule under similar circumstances, much less hold that it has the broad application the majority suggests. See United States v. Ticchiarelli, 171 F.3d 24, 32 (1st Cir.) (adopting Whren's waiver approach without mentioning Rule 32), cert. denied, 528 U.S. 850, 120 S.Ct. 129, 145 L.Ed.2d 109 (1999); United States v. Marmolejo, 139 F.3d 528, 530-31 (5th Cir.) (same), cert. denied, 525 U.S. 1056, 119 S.Ct. 622, 142 L.Ed.2d 561 (1998); United States v. Parker, 101 F.3d 527, 528 (7th Cir.1996) (adopting waiver approach similar to that of Whren without mentioning Rule 32).
 
 
 51
 I take issue as well with the majority's suggestion that the language of Rule 32(c)(1) supports permitting McCoy to raise her Note 7 objection at resentencing. See maj. op. at 565 ("Rule 32(c)(1)'s language... provides a broad opportunity to comment, and we think McCoy's perjury-specific contention clearly qualified."). Rule 32(c)(1) provides that
 
 
 52
 [a]t the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence, and must rule on any unresolved objections to the presentence report.... For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing.
 
 
 53
 FED.R.CRIM.P. 32(c)(1) (emphasis added). The court's apparently sweeping view of a party's "opportunity to comment on ... other matters relating to the appropriate sentence," maj. op. at 565 (quoting FED. R.CRIM.P. 32(c)(1)), would permit at resentencing an objection that at the original sentencing would not have "immediately affect[ed]" a defendant's combined offense level. Id. But that interpretation seriously misreads the Rule in its entirety. Rule 32(c)(1)'s reference to "other matters relating to the appropriate sentence" does not include McCoy's belated Note 7 objection, which constitutes instead a "comment on the probation officer's [previous obstruction-of-justice] determinations." FED. R.CRIM.P. 32(c)(1). By operation of text and under any reasonable reading of Rule 32 as a whole, "other matters relating to the sentence" do not include "comment[s] on the probation officer's determinations." Id. (emphasis added); see WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED 1599 (1981) ("other" means "not being the one ... first mentioned or of primary concern" (emphasis added)); see also United States v. Chung, 261 F.3d 536, 539 (5th Cir.2001) ("Rule 32(b)(6)(B)'s deadline ... would be meaningless if the district court were obliged to entertain new objections at the sentencing hearing" pursuant to Rule 32(c)(1)). Indeed, the cases that mention "other matters relating to the appropriate sentence" include "matters" such as a district court's sua sponte upward (or downward) departure, its imposition of a special condition of supervised release or any other condition of sentencing "not expressly contemplated by the [G]uidelines." E.g., United States v. Angle, 234 F.3d 326, 347 (7th Cir.2000), cert. denied, 533 U.S. 932, 121 S.Ct. 2556, 150 L.Ed.2d 722 (2001); see also, e.g., United States v. Hernandez, 251 F.3d 1247, 1250-52 (9th Cir.), reh'g denied, 280 F.3d 1216 (9th Cir.2001); United States v. Queensborough, 227 F.3d 149, 153-55 (3d Cir. 2000), cert. denied, 531 U.S. 1131, 121 S.Ct. 894, 148 L.Ed.2d 800 (2001); United States v. Pankhurst, 118 F.3d 345, 357 (5th Cir.), cert. denied, 522 U.S. 1030, 118 S.Ct. 630, 139 L.Ed.2d 609 (1997); United States v. Edgin, 92 F.3d 1044, 1048-49 (10th Cir. 1996), cert. denied, 519 U.S. 1069, 117 S.Ct. 714, 136 L.Ed.2d 633 (1997).
 
 
 54
 The United States Supreme Court has observed that, in conjunction with the integrated process set forth in Rule 32(b)(6), Rule 32(c)(1) was designed to "promot[e] focused, adversarial resolution of the legal and factual issues relevant to fixing Guidelines sentences." Burns v. United States, 501 U.S. 129, 137, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991). Whren dovetails with a proper reading of the Rule by requiring the parties to "raise all relevant issues at the original sentencing hearing," thereby ensuring that "[e]ach party gets early notice of the other's position [so that] the district court can resolve all material issues early on [and] when the record is fresh in mind." Whren, 111 F.3d at 959-60. I acknowledge that Rule 32, Burns and Whren direct the parties to raise only "relevant" or "material" issues at the original sentencing — so that they do not waste the district court's time — but I also recognize (as the majority does not) that McCoy's Note 7 objection was "relevant" under circuit precedent. See infra Part II.B.
 
 II.
 
 55
 Even if I were to accept the proposition that Rule 32(b)(6)(D) required the district court at resentencing to decide whether McCoy failed "for good cause shown" to raise the Note 7 objection at her original sentencing, I could not agree with the result reached today because (1) neither the government nor the defendant relied on the Rule at the panel stage and neither has urged (at any stage) the interpretation the majority adopts and applies retroactively; and (2) in any event, Whren holds by necessary implication that in this circuit a defendant cannot show "good cause" to raise a "new objection" at resentencing under Rule 32(b)(6)(D) if he had incentive to raise the objection earlier.
 
 
 A.
 
 
 56
 The court's focus on Rule 32 at the en banc stage is surprising. Our en banc briefing order directed the parties "to address in their briefs only the issue of whether the exception established in United States v. Whren, 111 F.3d 956 (D.C.Cir. 1997), for arguments `made newly relevant by the court of appeals' decision — whether by the reasoning or by the result,' id. at 960, applies to this case." Br. Order. Although the parties discussed Rule 32 in their supplemental briefs, neither party described any interplay of the Rule with Whren. Accordingly, we have been deprived of meaningful assistance from either the government or the federal public defender on the matter. In her en banc brief, McCoy did not submit that Rule 32(b)(6)(D) would have permitted her to raise her Note 7 objection at resentencing, see supra note 1; instead she claimed that Whren did not preclude her from doing so. She did claim that at her original sentencing "the Note 7 issue was not `material.'" See Supp. Reply Br. of Appellant at 3. But that simply brings us back to Whren, under which we must decide whether the Note 7 objection became "newly relevant" (i.e., newly "material") after our remand in McCoy I. I would hold that it did not. See infra Part II.B.
 
 
 57
 I am also surprised by the court's willingness to include an advisory opinion guiding a district court's good cause determination, see maj. op. at 565-66; the majority's list of possible good cause factors is unnecessary to deciding the question before us. Even more disturbing, the court — while conceding that the question of good cause is within the district judge's discretion in the first instance — "think[s] it clear that a district court finding of good cause would not have been an abuse of discretion." Id. at 566. I am at a loss; how can this proposition be clear when the parties have had no chance to test it in an adversarial context, whether before the district court, the panel or the en banc court?
 
 
 B.
 
 
 58
 The court observes that "the Whren test must be understood in light of [Rule 32]," maj. op. at 564, but fails to acknowledge the converse: the Rule must be understood in light of the Whren test. Whren holds that
 
 
 59
 [a] defendant should not be held to have waived an issue if he did not have a reason to raise it at his original sentencing; but neither should a defendant be able to raise an issue for the first time upon resentencing if he did have reason but failed nonetheless to raise it in the earlier proceeding.
 
 
 60
 Whren, 111 F.3d at 960 (emphasis added). The majority's repeated references to the Note 7 objection as "a contention that was contingently relevant in the initial sentencing," maj. op. at 561-62 (emphasis in original); see also id. at 563-64 ("potentially relevant"), 564 ("purely contingent"), 566 ("doubly contingent"), reveal its profound misunderstanding of the Whren rule. It should be clear by now that Whren defines relevance (or materiality) in terms of incentive, not of potentiality, imminence or certainty of effect. In this circuit, there is no such thing as a "contingently relevant" contention, much less a "doubly contingent" one; a defendant either has incentive at the initial sentencing to raise his objection or he does not. Following Whren jot-for-jot in Ticchiarelli, the First Circuit recognized this explicitly:
 
 
 61
 Whether there is a waiver depends not... on counting the number of missed opportunities (hearings, motions, etc.) to raise an issue, but on whether the party had sufficient incentive to raise the issue in prior proceedings. See United States v. de la Cruz-Paulino, 61 F.3d 986, 994 n. 5 (1st Cir.1995) (noting, in the context of FED.R.CRIM.P. 12, that "government violations of Rule 12(d)(2) should excuse a defendant's failure to move to suppress evidence prior to trial ... since defendants have no incentive to move to suppress evidence that the government will not be introducing"); see also Whren, 111 F.3d at 960. This approach requires a fact-intensive, case-by-case analysis.
 
 
 62
 Ticchiarelli, 171 F.3d at 32-33; see also United States v. Hass, 199 F.3d 749, 753 (5th Cir.1999) ("[W]hether a defendant waived an issue for consideration at resentencing is determined by whether the defendant had an incentive to raise that issue in the prior proceedings."), cert. denied, 531 U.S. 812, 121 S.Ct. 34, 148 L.Ed.2d 14 (2000). On the facts of Ticchiarelli, the court found that the defendant had not waived his resentencing objection by failing to raise it at his original sentencing because, by the time of that sentencing, "the district court had already issued a final ruling, memorialized in a published order" rejecting the argument. Ticchiarelli, 171 F.3d at 33. Ticchiarelli plainly lacked incentive to raise the objection at his sentencing; acknowledging that fact, the court stated that its "waiver doctrine does not require that a defendant, in order to preserve his rights on appeal, raise every objection that might have been relevant if the district court had not already rejected the defendant's arguments." Id. (emphasis altered); see also United States v. Rhodes, 145 F.3d 1375, 1378 (D.C.Cir. 1998) (permitting defendant to raise rehabilitation issue at resentencing where he "could not have argued at initial sentencing for a departure based upon post-sentence rehabilitative efforts since these efforts had not yet taken place" (internal quotation and alteration omitted)).
 
 
 63
 By contrast to Ticchiarelli's new objection, McCoy's Note 7 argument was not rejected by the district court before the original sentencing. Because she had no idea how the court was going to rule on any (much less all) of her sentencing challenges, McCoy had incentive to raise at the outset all objections she had to the revised presentence report to ensure that she received the lowest possible Guidelines range. In other words, McCoy had just as much incentive at sentencing as at resentencing to keep the gap in her offense levels at six, thereby minimizing the effect of the multi-group adjustment mandated by U.S.S.G. § 3D1.4. See McCoy II, 280 F.3d at 1063-64 ("Had she persuaded the sentencing judge [about one of her sentencing challenges] (as, we presume, was her purpose), McCoy's `controlling' false statement offenses level would have been reduced to 18, bringing it within four points of her perjury offense level and increasing the multi-group adjustment by one for a combined offense level of 20."); maj. op. at 561-64 (explaining section 3D1.4's application to this case). Had she raised the Note 7 claim at her original sentencing, she would have preserved the objection and averted the ensuing dispute.
 
 
 64
 * * *
 
 
 65
 Today's decision does the district court no favor. Abandoning Whren's bright-line waiver rule, the court (in dicta) replaces it with a non-exhaustive set of amorphous "McCoy factors"[2] that will inundate district judges with "good cause" claims at resentencing. Many of those claims are bound to be as meritless as the one now before us; even if the district court is able to dismiss them out of hand, the time spent considering them will be ill spent.[3]
 
 
 66
 So begins the era of de novo resentencing in the D.C. Circuit. Although some other circuits may be satisfied with the choice, I thought we had made a better decision. I respectfully dissent from the remand and would affirm the district court's May 9, 2001 resentencing judgment.
 
 
 
 Notes:
 
 
 [1]
 Although the parties expressed in theiren banc briefs "views of the Rule's role," maj. op. at 564, neither even remotely suggested the role the court propounds. See Supp. Br. of Appellee at 2, 5, 7, 9 n.4; Supp. Reply Br. of Appellant at 2-5. Indeed, McCoy herself argued that the "good cause" language of Rule 32(b)(6)(D) "applies only to objections that should have been made earlier under FED.R.CRIM.P. 32(b)(6)(B)." Supp. Reply Br. of Appellant at 4.
 
 
 [2]
 One of the court's factors in favor of finding good cause — "[a] person's liberty is at stake," maj. op. at 566 — is irrelevant. A person's liberty isalways at stake at sentencing. (That is the point, after all.) The makeweight "liberty factor" does not assist a sentencing judge to distinguish one new objection from the next.
 And although one of the majority's factors against a finding of good cause — "[i]f the defendant withheld the claim for strategic reasons," id. at 566 — makes substantive sense, the court cavalierly dismisses the notion that the factor is met here. It seems to me that McCoy chose for tactical reasons not to raise the Note 7 objection when she was originally sentenced. She did initially challenge the obstruction-of-justice enhancement on double jeopardy grounds. She argued that because she had been "convicted of perjury for statements that she made during a bankruptcy proceeding," and because she had made "precisely the same statement" during her criminal trial, "[t]o convict her of perjury and then to enhance her sentence on essentially the same conduct is unconstitutional [under] the Double Jeopardy Clause of the Constitution." McCoy's Supp. Sentencing Mem. at 5 (quoted in McCoy I, 242 F.3d at 408). On appeal in McCoy I, however, she took the opposite position; she challenged the enhancement on sufficiency-of-the-evidence grounds and contended that the two statements were different. See McCoy I, 242 F.3d at 408 ("McCoy argues ... that her testimony was not the same in both proceedings ...." (emphasis added)). In McCoy II, she asserts once again that she repeated "precisely the same statements" at her criminal trial that she made during the bankruptcy proceeding and that repeated perjury does not constitute a "significant further obstruction" under Note 7. Br. of Appellant at 19. Accordingly, even if Whren did not leave McCoy without "good cause" to raise her new objection at resentencing, the tactics of her counsel would.
 The court's failure to include as one of its McCoy factors the defendant's incentive to raise an objection at his original sentencing, see maj. op. at 565-66, seems to confirm that, after today, Whren is nothing more than "a derelict on the waters of the law." Lambert v. California, 355 U.S. 225, 232, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) (Frankfurter, J., dissenting).
 
 
 [3]
 The majority observes that "[d]istrict judges may adopt standing orders to guide practitioners" pursuant to FED.R.CRIM.P. 57(b). Maj. op. at 567. I, for one, would recommend they re-adoptWhren.