# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 15, 2016        Decided August 9, 2016

No. 13-3110

UNITED STATES OF AMERICA,
APPELLEE

v.

JUAN MELGAR-HERNANDEZ, ALSO KNOWN AS TRISTE,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cr-00256-RMC)

*Carmen D. Hernandez*, appointed by the court, argued the cause and filed the briefs for appellant.

*Daniel J. Lenerz*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Elizabeth Trosman* and *Chrisellen R. Kolb*, Assistant U.S. Attorneys.

Before: BROWN and SRINIVASAN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*: Appellant Juan Melgar-Hernandez pleaded guilty to a conspiracy charge under the

Racketeer Influenced and Corrupt Organizations Act. On appeal, Hernandez raises several challenges to his conviction and sentence. We reject the bulk of those challenges, except that we remand the case to the district court for resentencing in light of a retroactive amendment to the Sentencing Guidelines.

I.

On November 1, 2011, a federal grand jury indicted Hernandez, along with sixteen other alleged members of the MS-13 gang in the Washington, D.C., area, on a charge of conspiracy to conduct and participate in an enterprise through a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d). MS-13 is one of the largest gangs in the United States, with over 10,000 members in at least twenty states, Mexico, and several Central American countries. Gang members regularly engage in criminal activity, including assaults, drug crimes, theft, and obstructing justice. The gang is organized into "cliques," smaller groups operating in specific cities or regions.

In the D.C. area, certain cliques came together to create an organization called "La Hermandad," whose purpose was to allow clique leaders "to discuss gang rules and gang business, to resolve problems or issues involving the cliques, and to unite gang members." Indictment at 5 (J.A. 35). The indictment alleged that Hernandez was a leader of MS-13's "Las Uniones" clique between late 2009 and early 2010 and, in that capacity, helped form the La Hermandad organization. *See id.* at 5, 15 (J.A. 35, 45).

On March 8, 2013, Hernandez pleaded guilty to the RICO conspiracy charge pursuant to a plea agreement with

the government.  Under the statute, in order to demonstrate a "pattern of racketeering activity," the government must establish "at least two acts of racketeering activity" within a ten-year period.   18 U.S.C. § 1961(5).   "Racketeering activity" includes, as relevant here, "any act or threat involving murder . . . which is chargeable under state law and punishable by imprisonment for more than one year," as well as certain offenses involving controlled substances.   *Id*. § 1961(1).  As part of his plea agreement, Hernandez admitted that he had committed two predicate acts of racketeering activity: (i) conspiracy to murder in violation of the common law of Maryland and Maryland Criminal Code §§ 1-202 and 2-201, and (ii) conspiracy to distribute controlled dangerous substances in violation of 21 U.S.C. § 846.

In a written proffer submitted in support of his guilty plea, Hernandez stipulated to the underlying facts justifying his conviction.  He acknowledged having been "one of the leaders of *Hermandad*" and having distributed between 2 and 3½ kilograms of cocaine between November 2009 and March 2010.  Gov't Proffer of Proof in Supp. of Def.'s Guilty Plea (Mar. 8, 2013) (S.A. 10, 16).  With respect to the predicate act of conspiracy to commit murder, Hernandez admitted he had a conversation in January 2010 with an unidentified man who told Hernandez that the man's father had been killed in El Salvador.  Hernandez responded that "[w]e can arrange for someone to kill the son of a bitch [i.e. the perpetrator] from here . . . without you having to go to El Salvador."  Gov't Resp. to Def.'s Sentencing Mem., Ex. 3 (Dec. 5, 2013) (J.A. 148).  He also told the man that he would send him a phone with which to communicate with an MS-13 leader in El Salvador about the proposed murder.  *See* Gov't Proffer (S.A. 15).   Several months later, Hernandez had a phone conversation with men in El Salvador during which one of the men asked Hernandez "who they were supposed to 'hit.'"  *Id.*

(S.A. 16). Hernandez and the men discussed "the necessity of investigating the murder properly, and then sending two recruits (persons not yet jumped in to MS-13) to do the job" of killing the person in El Salvador. *Id.* There is no indication that the murder ever took place.

In light of those admissions by Hernandez, the government recommended a sentencing reduction based on his acceptance of responsibility. On December 9, 2013, the district court sentenced Hernandez to 156 months of imprisonment to be followed by three years of supervised release.

## II.

We first consider Hernandez's challenge to the factual basis for his guilty plea. Rule 11 of the Federal Rules of Criminal Procedure requires that, "before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). The requirement aims to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *McCarthy v. United States*, 394 U.S. 459, 467 (1969) (internal quotation marks omitted). Hernandez argues that there was an insufficient basis for his guilty plea because Maryland law does not criminalize conspiracy to commit murder beyond the state's borders (in El Salvador). We are unpersuaded.

In Maryland, conspiracy remains a common law crime. *See Mitchell v. State*, 767 A.2d 844, 852 (Md. 2001). Under state decisions, the "essence of a criminal conspiracy is an unlawful agreement" between "two or more persons to accomplish some unlawful purpose, or to accomplish a lawful

purpose by unlawful means." *Townes v. State*, 548 A.2d 832, 834 (Md. 1988). And importantly for our purposes, "the crime is complete when the unlawful agreement is reached, and no overt act in furtherance of the agreement need be shown." *Id*. Accordingly, in the case of conspiracy to commit murder, "once the agreement to murder has been made, the crime is complete without any further action." *Grandison v. State*, 506 A.2d 580, 617 (Md. 1986); *accord Khalifa v. State*, 855 A.2d 1175 (Md. 2004).

Here, it is undisputed that Hernandez entered into an agreement to commit murder during the phone calls with the unidentified man whose father had been killed in El Salvador. It is also undisputed that Hernandez participated in those conversations while in Maryland. *See* Gov't Proffer (S.A. 15-16). Under Maryland law, then, the crime of conspiracy was "complete" at the time Hernandez made the phone calls. *Grandison*, 506 A.2d at 617. The unlawful agreement had been reached. Nothing more was required.

Hernandez challenges that conclusion on the ground that an agreement to commit murder outside the state's borders is not a crime punishable under Maryland law. His argument relies on the concept of territorial jurisdiction, i.e., the notion that "an offense against the laws of the state of Maryland is punishable only when committed within its territory." *West v. State*, 797 A.2d 1278, 1282 (Md. 2002) (internal quotation marks omitted). Maryland adheres to the common law rule concerning territorial jurisdiction when some elements of a crime occur beyond state borders. Under that rule, Maryland courts have jurisdiction if the "essential element[]" of the offense takes place in Maryland. *State v. Butler*, 724 A.2d 657, 662 (Md. 1999).

In this case, because Maryland does not require proof of an overt act to establish a conspiracy, the "essential element[]" (indeed the only element) of the crime—the agreement to commit murder—took place in the state of Maryland. Hernandez's conduct thus violated Maryland law under applicable principles of territorial jurisdiction, notwithstanding the extraterritorial aim of the conspiracy. *See* 1 Wayne R. LaFave, Substantive Criminal Law § 4.4 (2d ed. 2015) ("[W]hen no overt act is required for the commission of conspiracy, it has been held that an agreement in state *A* to commit a crime in state *B*, is a conspiracy with its situs in state *A*.").

It is immaterial that, under principles of territorial jurisdiction, the object of Hernandez's conspiracy—murder in El Salvador—might not itself have been punishable in Maryland had it been carried out. Under Maryland law, the crime of conspiracy requires only an agreement "to accomplish *some unlawful purpose*." *Townes*, 548 A.2d at 834 (emphasis added). There is no requirement that the unlawful purpose itself be a crime *punishable* in Maryland. *See Lanasa v. State*, 109 Md. 602 (1909). In this case, it is readily apparent that the object of Hernandez's conspiracy—murder—is unlawful: it is undisputed that murder is illegal in both Maryland and El Salvador. *See* Md. Crim. Code § 2-201; Código Penal [Penal Code] art. 128 (El Sal.). Hernandez's agreement to commit that act therefore constitutes an agreement "to accomplish some unlawful purpose" for purposes of the crime of conspiracy under Maryland law. *Townes*, 548 A.2d at 834.

We have no need to consider whether we would reach a different conclusion if the intended aim of the conspiracy were unlawful in Maryland but not in El Salvador, or unlawful in El Salvador but not in Maryland. *See, e.g.*,

*People v. Morante*, 975 P.2d 1071, 1086 (Cal. 1999). We conclude here only that, when the object of an extraterritorial conspiracy is unlawful in both Maryland and the jurisdiction in which it is to be carried out, entering into an agreement while in Maryland to commit that act violates Maryland law. Consequently, Hernandez's guilty plea satisfied the requirements of Rule 11.

In light of our conclusion that the district court committed no error in accepting the factual basis for Hernandez's guilty plea, we need not resolve the parties' dispute about whether Hernandez preserved his factual-basis objection in the district court. Failure to raise an objection in district court ordinarily would result in the application of a more onerous standard of review from the defendant's perspective—i.e., plain-error review rather than harmless-error review. *See United States v. Moore*, 703 F.3d 562, 569 (D.C. Cir. 2012). Because we find that the district court committed no error in the first place, we need not decide whether to apply plain-error or harmless-error review. In either event, we would affirm.

## III.

We next consider Hernandez's challenges to his sentence. The district court calculated Hernandez's sentencing range under the Sentencing Guidelines to be 151 to 188 months. The court then sentenced him to 156 months of imprisonment to be followed by three years of supervised release. Hernandez contends that the district court committed procedural error at sentencing and that the sentence is substantively unreasonable. We reject both arguments.

8

A.

Hernandez argues that the district court committed procedural error by failing to address the mitigating factors he presented at sentencing. Because Hernandez did not object to this alleged error in the district court, we review his claim for plain error. *In re Sealed Case*, 527 F.3d 188, 91-92 (D.C. Cir. 2008). To prevail under that standard, Hernandez must establish that, "during the plea colloquy, (1) the District Court erred, (2) the error was clear or obvious, (3) the error affected his substantial rights, and (4) the error 'seriously affected the fairness, integrity, or public reputation of judicial proceedings.'" *Moore*, 703 F.3d at 569 (quoting *United States v. Olano*, 507 U.S. 725, 732-36 (1993) (alteration omitted)).

In his sentencing memorandum and at the sentencing hearing, Hernandez presented a number of considerations which, he contended, warranted a below-Guidelines sentence. He argued, among other things, that the murder "conspiracy was never actually consummated with the murder of anyone," Def.'s Sentencing Mem. at 7 (Nov. 25, 2013) (J.A. 109), and that the drug-distribution conspiracy did not involve "the trafficking of large wholesale quantities" of drugs, *id.* at 13 (J.A. 115). He also emphasized certain personal characteristics, such as his young age when joining MS-13 and his ostensibly low risk of recidivism. *Id.* at 16-17 (J.A. 118-19). Hernandez argues that the district court failed to fulfill its obligation under 18 U.S.C. § 3553(a) to consider "the nature and circumstances of the offense and the history and characteristics of the defendant" in determining his sentence.

Our review calls for us to determine whether the district court "adequately explain[ed] the chosen sentence," *United States v. Locke*, 664 F.3d 353, 355 (D.C. Cir. 2011) (internal

quotation omitted), and "considered the necessary factors" under 18 U.S.C. § 3553(a), *United States v. Wilson*, 605 F.3d 985, 1034 (D.C. Cir. 2010). It is clear from the record that the district court addressed the section 3553(a) factors at sentencing and took into account "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a).

The district judge observed that Hernandez's statements at sentencing and the fact of his guilty plea indicated "that he has developed respect" for the law. Sentencing Hr'g Tr. at 36 (J.A. 186). She then specifically addressed the personal characteristics Hernandez had highlighted, noting that he "had alternatives," had been "distracted from [the] purpose" for which he had come to the United States and "distracted from his father," and had ended up "toss[ing those goals] away in exchange for the gang." *Id*. at 38 (J.A. 188). Additionally, the district judge observed that the predicate acts admitted by Hernandez "are all serious offenses and quite injurious to the community." *Id*. at 35 (J.A. 185). She further emphasized the need to deter Hernandez from "future criminal conduct until such time as we're confident that he won't engage [in] any more [crimes] and to signal to others that his conduct has consequences." *Id*. at 37 (J.A. 187). Ultimately, the mitigating considerations persuaded the district judge to impose a 156-month sentence, as opposed to a "higher sentence" closer to 180 months. *Id*. at 39-40 (J.A. 189-90).

In light of those statements, we reject Hernandez's argument that the district court committed any procedural error—much less plain error—at sentencing. The court adequately explained the basis for the chosen sentence, and, in such instances, we generally presume that the judge adequately considered the relevant arguments. *See Locke*, 664 F.3d at 358-59. Here, the district judge not only

considered the mitigating circumstances Hernandez raised, but she also imposed a lower sentence in part because of them. The district court was not required under section 3553(a) "to address expressly each and every argument advanced by the defendant." *Id.* at 357; *see United States v. Simpson*, 430 F.3d 1177, 1186 (D.C. Cir. 2005).

B.

In addition to his procedural challenge, Hernandez also contends that the sentence imposed by the district court was substantively unreasonable. We review the "substantive reasonableness of a sentence under the abuse of discretion standard even when no objection was raised in the district court." *Wilson*, 605 F.3d at 1034. In doing so, we start from the understanding that, in this circuit, "a sentence that is within the Guidelines range is entitled to a presumption of reasonableness on appeal." *United States v. Kaufman*, 791 F.3d 86, 89 (D.C. Cir. 2015). Hernandez's 156-month sentence fell within the applicable Guidelines range and thus fits into that category.

In arguing that his sentence is substantively unreasonable, Hernandez invokes the same mitigating factors he raised at sentencing, including, for example, his status as a first-time offender, his lack of direct involvement in violence, his young age when joining MS-13, and his dedication to his family. Several of those considerations, e.g., his status as a first-time offender, are already reflected in the applicable Guidelines range. Moreover, as explained, the district court considered the other personal characteristics and balanced them against the seriousness of the offenses and the need for deterrence. We "defer to the district court's judgment when," as here, "it has presented a 'reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the

sentence.'" *United States v. Ventura*, 650 F.3d 746, 751 (D.C. Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 59-60 (2007)).

Hernandez also contends that his sentence is unreasonable because it results in unwarranted sentencing disparities between Hernandez and other members of MS-13 who were indicted at the same time, several of whom directly participated in violent activity (unlike Hernandez) but received shorter sentences. Such disparities, however, stem from the varying Guidelines ranges applicable to defendants charged with and convicted of different offenses. Hernandez's Guidelines range reflected personal factors such as his leadership role in MS-13 and history of involvement with the gang. We thus reject his argument that the sentence imposed by the district court was substantively unreasonable.

IV.

Finally, Hernandez argues that the case should be remanded to the district court for resentencing in light of a retroactive amendment to section 2D1.1 of the Guidelines. We agree.

Section 2D1.1 provides the framework for calculating the Guidelines range for numerous drug offenses. Hernandez's offense level (and thus his Guidelines range) was based in part on that section because conspiracy to distribute drugs was one of the two predicate acts used to establish his RICO conspiracy conviction. Hernandez seeks to benefit from Amendment 782, promulgated in 2014, which generally reduced base offense levels under section 2D1.1 by two levels. *See* U.S.S.G. Supp. to App'x C, Amd. 782 (effective Nov. 1, 2014). Although the amendment came after

Hernandez's sentencing, the Sentencing Commission made the amendment retroactive. *See* U.S.S.G. § 1B1.10(d).

The government argues that there nonetheless is no need to remand for resentencing in this case. The government relies on a Guidelines provision establishing that a retroactive Guidelines amendment warrants a "reduction in the defendant's term of imprisonment" only if the amendment has "the effect of lowering the defendant's applicable guidelines range." U.S.S.G. § 1B1.10(a)(2)(B). Here, the government explains, Amendment 782 does not have the direct effect of lowering Hernandez's sentencing range. Although the government is correct that Amendment 782 would not directly lower Hernandez's offense level (and hence his sentencing range), we still conclude that a remand for resentencing is warranted.

First, the reason Amendment 782 does not directly affect Hernandez's sentencing range relates to the Guidelines' grouping rules for multiple offenses. When a defendant commits multiple offenses, the most serious offense provides the starting point for determining the Guidelines range. *See* U.S.S.G. § 3D1.4. That starting point is then adjusted to reflect the addition of other offenses, based on their seriousness. *See id.* Hernandez's adjusted offense level for conspiracy to commit murder (36) exceeded his adjusted offense level for conspiracy to distribute controlled dangerous substances (31). The former accordingly served as the starting point for calculating his final offense level. The grouping rules called for adding one point for the drug conspiracy. *See id*. The resulting combined offense level (37) was then reduced by three levels for Hernandez's acceptance of responsibility, giving rise to a final offense level of 34. Based on Hernandez's status as a first-time

offender, that offense level resulted in a Guidelines range of 151 to 188 months of imprisonment.

Applying Amendment 782 to Hernandez's Guidelines calculation would not affect that range. The amendment would lower Hernandez's adjusted offense level for the drug conspiracy by two levels to 29. But the adjusted offense level for conspiracy to commit murder (36) would still serve as the starting point for his sentence. And the grouping rules would still add one point to account for the drug conspiracy, resulting in the same combined offense level (37) and the same final offense level (34) after the reduction for acceptance of responsibility. *See id.* Hernandez's Guidelines range would thus remain unchanged even if the amendment were applied. Ordinarily, as explained, that result would prevent us from remanding the case for resentencing. *See id.* § 1B1.10(a)(2)(B).

We confront a unique situation here, however. Hernandez claims that the district court incorrectly applied a three-level upward adjustment for his leadership role in the drug conspiracy, resulting in an erroneous adjusted offense level of 31. He did not raise that alleged error in the district court, because, at the time, it would have had no effect on his final offense level (even if his challenge was successful). Specifically, without the three-level leadership adjustment, Hernandez's adjusted offense level for the drug conspiracy would have been 28 instead of 31. The starting point for his Guidelines range would still have been his adjusted offense level for the murder conspiracy (36). Under the grouping rules, factoring in the drug conspiracy at an adjusted offense level of 28 would have had the same effect: one point would have been added to the starting level (36), resulting in the same combined offense level of 37. *See id.* § 3D1.4. Hernandez therefore had no reason to contest whether the

adjusted offense level for the drug conspiracy should have been 28 or 31.

With the promulgation of Amendment 782, however, the lower adjusted offense level for the drug conspiracy makes a difference. The amendment reduces Hernandez's base offense level for the drug conspiracy from 28 to 26. Without the three-level leadership bump that Hernandez now contests, his adjusted offense level would remain 26. As before, the adjusted offense level for the murder conspiracy (36) would continue to serve as the starting point. But, unlike before, the combined offense level in that circumstance would be 36 (instead of 37). That is because, under the grouping rules, no points are added to the adjusted offense level for the primary offense when the difference between the two offense levels equals nine or more points. *See id.* After the reduction for acceptance of responsibility, Hernandez's final offense level would be 33 (instead of 34), with a lower sentencing range of 135 to 168 months.

In light of that potential effect, we conclude that resentencing is appropriate to enable Hernandez to challenge the application of the leadership adjustment in calculating his Guidelines range. Our decisions support giving a defendant the opportunity to make sentencing arguments in comparable circumstances. In *United States v. Whren*, we held that, "upon a resentencing occasioned by a remand . . . the district court may consider . . . such new arguments or new facts as are made newly relevant by the court of appeals' decision." 111 F.3d 956, 960 (D.C. Cir. 1997). Subsequently, in *United States v. McCoy*, 313 F.3d 561 (D.C. Cir. 2002) (en banc), we construed Rule 32 of the Federal Rules of Criminal Procedure, which provides that, at sentencing, the court "may, for good cause, allow a party to make a new objection at any time before sentence is imposed." We held that district courts

should consider at resentencing whether previously-unmade arguments fell within the "good cause" exception when the arguments were only contingently relevant before. We explained that parties at sentencing lack "reason to raise a doubly contingent objection for which the likelihood of any significance is remote." *Id.* at 566 (internal quotation marks omitted). Additionally, we observed, an "absolute requirement to raise all objections (regardless of the degree of relevance) is likely both to waste judicial resources and work injustice." *Id.*

While those decisions involved sentencing arguments made relevant by an intervening judicial decision, as opposed to a retroactive Guidelines amendment, the concerns underlying those decisions lead us to conclude that Hernandez similarly should be permitted to argue that the leadership adjustment was erroneously applied in calculating his drug conspiracy offense level. At the time of Hernandez's sentencing, the likelihood of that argument's having any significance was "remote." *Id.* The argument, however, was made "newly relevant" by Amendment 782. *Wren*, 111 F.3d at 960. In those circumstances, remand for resentencing is warranted. To rule otherwise would stand in considerable tension with the Sentencing Commission's instruction that Amendment 782 is to be applied retroactively. It would also engender an incentive for defense lawyers to raise highly contingent objections in the district court, which would result in a waste of judicial resources in the long run.

16

* * * * *

For the foregoing reasons, we affirm Hernandez's conviction but we vacate his sentence and remand the case to the district court for resentencing.

*So ordered.*