**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 06a0935n.06
Filed: December 26, 2006
No. 06-1185

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiffs-Appellee*

                                    On Appeal from the United States District
                                    Court for the Western District of Michigan
           v.                          Southern Division

ANDRE WASHINGTON ADAMS,
    *Defendant - Appellant*

_____/

**BEFORE: KENNEDY, COLE, and COOK Circuit Judges.**

**KENNEDY, Circuit Judge.** Andre Washington Adams appeals his 188-month sentence for bank robbery as unreasonable. On this appeal after a *Booker* remand, he argues that the district judge (1) engaged in impermissible judicial fact-finding and (2) failed to consider mitigating evidence. Because we find that the district court did not err, we **AFFIRM**.

**BACKGROUND**

Defendant Andre Washington Adams pleaded guilty to bank robbery on February 24, 2004. The plea agreement stated:

> On February 3, 2003 he entered the Bank One branch located at 141 East Michigan Avenue, Kalamazoo, Michigan with a device that he described as a bomb. He then demanded that the teller give him bank funds. The teller, who feared for his life, responded to this demand by giving the defendant $2,658 in bank funds. The defendant then left the bank with that money. At the time of this incident, Bank One was insured by the Federal Deposit Insurance Corporation.

JA at 36-37. During the plea hearing, Adams also admitted that he had been wearing a disguise that consisted of, "[a] coat, a grayish coat, a wig, and a hood and band." JA at 87.

A presentence investigation report (PSIR) was prepared and Adams was interviewed by the presentence investigator. In the interview, Adams admitted that he was smoking crack cocaine until 5:00 or 6:00 am on the morning of the robbery. Intending to obtain money for drugs, he took a wig, a scarf, sunglasses, and a long coat and disguised himself as a woman. He arrived at a Bank One branch in Kalamazoo, Michigan and set a device on the counter that he claimed was a bomb. It was, in fact, a cell phone and several red candlesticks wrapped with black electrical tape. The teller handed him some $2,600 and he left the bank. He removed his disguise and boarded a city bus. After he arrived home, Adams used some of the money to purchase drugs and gave some of the money to his then girlfriend Jesse Lipsey.

The PSIR noted that Lipsey had testified to a grand jury that Adams contacted her and told her not to testify about the disguise he acquired at her house. JA at 136. In addition, it noted that Adams' cellmate notified authorities that Adams had asked him to kill Ms. Lipsey. Finally, it noted that Ms. Lipsey also informed authorities that Adams' nephew had visited her at her home and threatened her. Adams maintained his innocence regarding the threats throughout the proceedings, but the presentence investigator included the charges in his report.

On May 25, 2004, the district court, treating the United States Sentencing Guidelines ("Guidelines") as mandatory, sentenced Adams to 188 months in prison, three years of supervised release, and restitution. He appealed that sentence, which was vacated and remanded by this court in light of *United States v. Booker*, 543 U.S. 220 (2005).

On January 12, 2006, the district court, treating the Guidelines as advisory, reconsidered but ultimately reinstated Adams' sentence. This timely appeal followed.

**DISCUSSION**

2

**I. Standard of Review**

We review sentences for reasonableness. *United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006). This review has two components, procedural and substantive reasonableness. *United States v. James Williams*, 432 F.3d 621, 623 (6th Cir. 2005). Procedural reasonableness requires that the district judge "consider" a variety of factors including the Guidelines recommendation and the list of factors found in 18 U.S.C. § 3553(a). *Collington*, 461 F.3d at 808. Such consideration does not require that a district court recreate the laundry list of all the factors we have previously found to be applicable in inapposite cases, but does require that the court list specific reasons for its decisions and explain how those reasons justify the sentence imposed. *James Williams*, 432 F.3d at 623. The purpose of procedural reasonableness review is to facilitate appellate review and thus the district court must simply indicate why this defendant is different from most.

A sentence does not satisfy the substantive reasonableness requirement if "the district court select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors, or giv[es] an unreasonable amount of weight to any pertinent factor." *Collington*, 461 F.3d at 808 (internal citations and quotation marks omitted).

Although the Guidelines are advisory and not mandatory on the district court, we as a court of appeal still defer to their recommendations. This deference is deserved because the Guidelines reflect "nearly two decades of considered judgment about the range of appropriate sentences," *United States v. Buchanan*, 449 F.3d 731, 736 (6th Cir. 2006) (Sutton, J., concurring). We review the application of the guidelines *de novo*. *United States v. Katzopoulos*, 437 F.3d 569, 574 (6th Cir. 2006). If the sentence is within the range set by the guidelines, it is presumed to be reasonable. *United States v. Leonard Jermain Williams*, 436 F.3d 706, 708 (6th Cir. 2006).

In addition to the considerable deference we give to a district court's sentence that is within the range recommended by the Guidelines, the Government, citing *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), urges us to apply the plain error standard of review to this case because Adams did not object to either the PSIR or his sentence when given the opportunity to do so in the court below. Since we conclude that the district court did not err, we need not engage in that inquiry.

## II. Computation of the Guidelines Sentence

Adams argues that the court below misapplied the Guidelines in three ways: (1) it inappropriately relied on allegations of obstruction of justice when those facts were not proven beyond a reasonable doubt, (2) relied on hearsay in violation of the Confrontation Clause, and (3) it added an enhancement based on the finding that he was a career offender within the meaning of U.S.S.G. § 4B1.1.

### a. Obstruction Charge

The PSIR added four points for obstruction of justice and involvement of others. It noted that several witnesses had testified that Adams threatened his former girlfriend to prevent her from testifying and that he enlisted others to do so, soliciting his cell mate and his nephew. While the PSIR ultimately relied only on the career offender enhancement, 18 U.S.C. § 4B1.1, in determining Adams' recommended sentence, it appears that the obstruction charge might have influenced the district court to sentence Adams at the top of the range recommended by the Guidelines.

In *Booker*, the Supreme Court found that, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244. The plea agreement did not establish the facts of

4

obstruction of justice. Rather, Adams consistently denied these allegations. However, the statutory maximum for bank robbery is 20 years. 18 U.S.C. § 2113(a). Adams was sentenced to only 188 months. Therefore, the obstruction enhancement did not increase his sentence beyond the maximum authorized by the statute and thus did not violate *Booker*.

While the court below did not explicitly find that Adams had acted to obstruct justice as alleged by the PSIR, it was certainly aware of the charge and that Adams contested their inclusion. The government, Adams, and the court discussed the allegations in the PSIR and the surrounding issues at length during the resentencing colloquy. Adams admitted that his nephew had pleaded guilty to misprision of a felony. It was uncontroverted that Lipsey had testified to a grand jury that Adams had contacted her in an attempt to change her testimony.

Ultimately, the test of a sentence is its reasonableness. Therefore, we must determine whether it was reasonable for the district court to sentence Adams to 188 months. We examine reasonableness more fully below, but we reiterate that because the obstruction charge did not increase Adams' sentence beyond "the maximum authorized by the facts established by a plea of guilty," *Booker*, 543 U.S. at 244, i.e. bank robbery, the charge did not need to be proven beyond a reasonable doubt.

### b. Confrontation Clause Violation

Adams also argues that hearsay admitted at sentencing, to wit the PSIR's reliance on absent witnesses, violates his Sixth Amendment rights to Confrontation as established by *Crawford v. Washington*, 541 U.S. 36 (2004). He admits in his brief that this argument has already been rejected by this court in *Katzopoulos*, 437 F.3d at 576. This panel cannot overrule that decision, thus we reject this argument.

### c. Career Offender Enhancement

Likewise, this court has also rejected the argument that the Supreme Court's holding in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), is no longer good law. *See United States v. Hill*, 440 F.3d 292, 299 n.3 (6th Cir. 2006). Adams admits that his argument is erroneous in light of this circuit's precedent yet "wishes to preserve the issue for further appellate review." Therefore, we reject this argument.

## III. Reasonableness of Sentence

### a. Section 3553(a) Factors

The district court provided adequate explanation for imposing the sentence it did. It properly acknowledged the advisory nature of the Guidelines recommendation and demonstrated its awareness of the importance of the § 3553(a) factors. Furthermore, it was very active in questioning the lawyers for both the government and Adams in a clear attempt to discover all the circumstances of the case, including Adams post-sentencing behavior. It asked for a statement from Adams and questioned him extensively about that statement.

It noted that it considered Adams a "dangerous individual whose habitual drug use motivates and fuels his criminal conduct." Further, it noted Adams' prior felony convictions and concluded that he had "committed himself to a life of crime." In addition, the court considered Adams' argument that it could not consider the facts alleged in the PSIR unless those facts were found by a jury and rejected that argument. As noted previously, it did not have to find facts under the beyond a reasonable doubt standard unless those facts increased his sentence beyond the statutory maximum. There is sufficient evidence to support that finding and so we give it the deference that we give all findings of fact.

***b. Failure to Consider Mitigating Evidence***

Adams argues that the district court erred when it refused to consider Adams' post-sentence

rehabilitation and depart downward from the sentencing range recommended by the guidelines. The

district court stated:

> The sentencing memorandum asks for a guideline departure based on rehabilitative
> efforts of the defendant as to education and substance abuse programs since being in
> prison. Defendant's request has to be denied since post sentencing rehabilitative
> efforts are not an appropriate basis for downward departure when re-sentencing a
> defendant. If you don't believe that, look at [U.S.S.G. §] 5K2.19.

In *United States v. Rudolph*, finding a circuit split on the issue, we decided that "a district

court has the discretion to depart downward on the basis of post-sentence rehabilitation. . . . [D]istrict

courts may depart downward because neither the Sentencing Guidelines nor any statute explicitly

bars consideration of post-sentence rehabilitation." 190 F.3d 720, 723 (6th Cir. 1999) (internal

quotation marks and citations omitted). Such a departure is only available, however, if the

rehabilitative efforts "seem extraordinary or exceptional when compared to the rehabilitation of other

defendants." *Id.* at 728.

Subsequently, however, a policy statement was added to the Guidelines, which stated,

"[p]ost-sentencing rehabilitative efforts, even if exceptional, undertaken by a defendant after

imposition of a term of imprisonment for the instant offense are not an appropriate basis for a

downward departure when resentencing the defendant for that offense." U.S.S.G. § 5K2.19

(effective November 1, 2000). This policy statement would appear to foreclose the availability of

the downward departures based on post-sentencing rehabilitation.

The parties disagree as to the effect of this policy statement. Adams argues that *Booker*

declared such limitations on a district judge's considerations unconstitutional. The government

counters that the mandate of § 5K2.19 is appropriate for two reasons: First, good behavior is already

rewarded. Prisoners already may receive a maximum of 54 days per year off their sentence for good

behavior at the discretion of the Bureau of Prisons. 18 U.S.C. § 3624(b)(1). Second, allowing some

defendants a second bite at the good behavior apple would result in unfair sentencing disparity and,

thus, run afoul of 18 U.S.C. § 3553(a)(6). It is worth noting that such a rule would also create

incentives for procedural error in order to get additional benefits from a longer period to demonstrate

rehabilitation.

Regardless, this issue has already been foreclosed by our court. In *United States v. Worley*,

the defendant, "insist[ed] that at his second sentencing hearing, the district court erred in failing to

consider his successful efforts at rehabilitation during almost three years that he was incarcerated

prior to re-sentencing . . . ." 453 F.3d 706, 707 (6th Cir. 2006). We noted that, "[i]n point of fact,

case law in this circuit previously permitted a sentencing court to depart downward for extraordinary

rehabilitative efforts between an original sentencing and subsequent re-sentencing, but only under

limited circumstances." *Id.* at 709. Yet, we ultimately concluded that a *Booker*-remand was limited

in scope and that, "[p]ost-sentencing events or conduct simply are not relevant . . . ." *Id.* (quoting

*United States v. Re*, 419 F.3d 582, 584 (7th Cir. 2005)). Therefore, the district court was not in error

when it failed to consider Adams' good behavior.

Because the district court properly considered the Guidelines range and the § 3553(a) factors

and did not improperly fail to consider any of Adams' mitigating arguments, the sentence is not

procedurally unreasonable.

The sentence is also substantively reasonable. The factors on which the court relied –

Adams' criminal history, his apparent dedication to a life of crime, and the seriousness of the offense

8

– are not inappropriate. In addition, it does not appear that any one factor or a few factors were given inappropriate weight. Therefore, Adams has not rebutted the presumption that the within-Guidelines sentence was reasonable.

## CONCLUSION

For the foregoing reasons, the district court's imposed sentence is **AFFIRMED**.