**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0181n.06
Filed: March 7, 2007

**No. 06-1147**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| WILMER FEAZELL, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Appellant. | ) | |

Before: COLE, SUTTON and COOK, Circuit Judges.

PER CURIAM. Wilmer Feazell challenges his 125-month sentence, imposed after a *Booker* remand, arguing that it is both procedurally and substantively unreasonable. We conclude that it is neither and therefore affirm.

I.

At 4:00 a.m. on October 19, 2002, a Grand Haven (Michigan) police officer observed a car traveling 30 miles per hour in a 50-mile-per-hour zone. The officer could not see anyone inside the car, so he pulled up alongside it. Noticing that the driver was slumped down in his seat and not wearing a safety belt, the officer stopped the car.

The officer walked up to the car and asked the driver his name. After Feazell gave inconsistent answers about what he was doing and where he was going, the officer asked if he could search the car for contraband. Feazell said he had nothing to hide and agreed to the search.

Feazell exited the car, the officer performed a quick pat down and the officer searched the car's interior. The officer then opened the trunk and told Feazell to follow him to the back of the car. The trunk appeared to be empty, but the officer noticed that the lining on the right side of it seemed to be falling down. When he pulled back the lining, he found a white plastic bag stuffed into the side wall of the trunk. As the officer tried to grab the bag, Feazell ran to the front of the car, jumped into the driver's seat and started the car. The officer reached through the window to try to turn off the car, but Feazell put it in drive and hit the accelerator, knocking the officer off of his feet and leaving him balancing on the car's window ledge. Feazell continued to accelerate, eventually causing the officer to fall and strike the pavement, sprain both wrists and suffer multiple cuts and bruises to his body.

The officer radioed for backup, got into his cruiser and pursued Feazell. During the chase, Feazell sped north on the interstate at speeds over 100 miles per hour. Feazell eventually lost control of his car on an exit ramp and skidded into a grassy area. The officer used his cruiser to block the bottom of the ramp, while a local sheriff's deputy parked his car across the top of the ramp. Regaining control of his car, Feazell drove the wrong way down the ramp and slammed into the officer's cruiser. Feazell jumped out of his car and fled on foot. The officer eventually released a police dog, which caught and restrained Feazell.

The officer found three packages of cocaine inside the trunk of Feazell's car. He also discovered a lead-filled club under the passenger seat of the car. Feazell admitted that he had been transporting the cocaine for a drug distributor.

Feazell was convicted in Michigan state court of assaulting a police officer, fleeing from a police officer and possessing an assault weapon. State law enforcement officers referred the drug charges to the Drug Enforcement Agency for federal prosecution.

Feazell eventually pleaded guilty to the federal charge of possessing with the intent to distribute 500 grams or more of cocaine. *See* 21 U.S.C. § 841(b)(1)(B)(ii). Calculating Feazell's offense level as 27 and his criminal history as category V, the district court determined that his guidelines sentencing range was 120–150 months. The court sentenced Feazell to 125 months' imprisonment.

A panel of this Court granted a joint motion by Feazell and the government to vacate this sentence after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and remanded the case to the district court for resentencing. The resentencing took place before a different district judge, who also found that Feazell's guidelines range was 120–150 months. The judge sentenced Feazell to 125 months' imprisonment.

II.

Feazell first contends that his sentence is procedurally unreasonable. *See United States v. Davis*, 458 F.3d 491, 495 (6th Cir. 2006) (noting that courts of appeals review criminal sentences for "procedural" and "substantive" reasonableness). A sentence is procedurally unreasonable when a district court miscalculates the guidelines sentencing range, fails to consider the factors enumerated in 18 U.S.C. § 3553(a) or deems the guidelines mandatory instead of advisory. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). In contending that his sentence is procedurally unreasonable, Feazell argues that the district court failed to consider his post-sentencing rehabilitative efforts during the period between his first and second sentencing hearings. He is wrong as a matter of fact and as a matter of law.

As a matter of fact, the district court *did* consider Feazell's attempts to better himself while imprisoned—and it did so in a way that helped Feazell. Before imposing the sentence, the district court said:

> My inclination is to think, frankly, that [a] sentence of 145 or 150 months with your background is a more appropriate sentence than the sentence of 125 months that was originally imposed; but because of your productivity in prison, I am persuaded that you have done at least what is expect[ed] of someone in your position in prison to try to better yourself, and I will not think any further about the imposition of a sentence higher than the 125 months that was originally imposed.

JA 121–22.

As a matter of law, the district court had no obligation to consider Feazell's post-sentencing rehabilitative efforts. In point of fact, our case law precludes a district court from considering post-sentencing rehabilitation after a *Booker* remand as a basis for reducing a defendant's sentence. *United States v. Worley*, 453 F.3d 706, 709 (6th Cir. 2006) ("The goal of the *Booker* remand is to determine if, at the time of sentencing, the district judge would have imposed a different sentence in the absence of mandatory guidelines. Post-sentencing events or conduct simply are not relevant to that inquiry.") (internal quotation marks and brackets omitted); *see United States v. Adams*, No. 06-1185, 2006 WL 3791317, at *5 (6th Cir. Dec. 26, 2006) (holding that the district court properly declined to consider post-sentencing rehabilitative efforts); *United States v. Smith*, No. 05-4644, 2006 WL 3717660, at *1 (6th Cir. Dec. 18, 2006) (reversing a district court's sentencing determination because the court's "only explicit justification for [the] variance [was] its reliance on [the defendant's] post-sentencing rehabilitation efforts"); *see also* U.S.S.G. § 5K2.19 ("Post-sentencing rehabilitative efforts, even if exceptional . . . are not an appropriate basis for a downward departure when resentencing the defendant for that offense."). If there was error here, in other words, it favored the defendant, not the government (which does not challenge his sentence).

Feazell responds that one of these cases—*Worley*—was a straightforward *Booker* remand, while his was "more than a simple remand" because we vacated his original sentence. Reply Br. at 1. But in vacating Feazell's sentence we explicitly noted the limited scope of the remand—a scope the parties themselves embraced when they moved for resentencing. *See* JA 30 ("The parties now jointly move to vacate the defendant's sentence and to remand his case . . . for resentencing in light

of *United States v. Booker*."); *see Adams*, 2006 WL 3791317, at *1, *5 (noting that original sentence was "vacated and remanded by this court in light of *United States v. Booker*" and affirming district court's decision not to consider post-sentencing rehabilitation).

In his opening brief, Feazell also suggests, with little elaboration, that the district court failed to take into account the time he had already served in state prison for the state convictions stemming from this incident. Br. at 20–21. Contrary to his suggestion, our decision in *United States v. Richardson*, 437 F.3d 550 (6th Cir. 2006), does not compel district courts to address every argument the defendant raises—no matter how non-meritorious or undeveloped it is—in imposing a sentence. *See United States v. Jones*, 445 F.3d 865, 871 (6th Cir. 2006) (concluding that a sentence is not unreasonable "whenever a district judge does not explicitly address every defense argument"); *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006) ("A sentencing judge has no more duty than we appellate judges do to discuss every argument made by a litigant; arguments clearly without merit can, and for the sake of judicial economy should, be passed over in silence.") (internal quotation marks omitted); *see also United States v. Oglesby*, No. 05-6528, 2007 WL 247890, at *6 (6th Cir. Jan. 30, 2007) (finding "consideration of Defendant's mitigation argument unnecessary" because it "was woefully unsupported").

At any rate, even if it were error not to address this argument specifically, the error was harmless. The guidelines instruct district courts to increase an individual's criminal history category based on prior state and federal convictions, most of which lead to prison time. Feazell fails to

explain why his state convictions—indeed, state convictions not considered in determining his criminal history—ought to mitigate (rather than exacerbate) the length of his sentence.

Feazell finally argues (in two sentences) that his sentence is substantively unreasonable for the same reasons he claims that it is procedurally unreasonable. Br. at 22. In view of Feazell's "extremely troubling," JA 120, extensive and violent criminal history—including multiple assaults and an attempted murder conviction that occurred while he was incarcerated—the district court reasonably concluded that a 125-month sentence was appropriate.

### III.

For these reasons, we affirm.